## 1103

The SOUTH CAROLINA NATIONAL BANK, Successor By Merger To The First National Bank Of South Carolina, Respondent v. SILKS, A South Carolina Limited Partnership, and Eric A. Brooks, W. Vaughan Davidson, and Frank E. Fowler, As A General Partner of Silks, A South Carolina Limited Partnership, and Individually, Defendants, Of Whom Silks, A South Carolina Limited Partnership, and Frank E. Fowler, As General Partner Of Silks, A South Carolina Limited Partnership, and Individually, are Appellants.

(367 S. E. (2d) 421)

Court of Appeals

*Thomas S. Tisdale, Jr.,* and *Stephen P. Groves of Young, Clement, Rivers & Tisdale,* Charleston, *for appellants.*

*G. Dana Sinkler,* Charleston, and *H. Simmons Tate, Jr.,* Columbia, *of Sinkler & Boyd, P.A. for respondent.*

Heard Jan. 26, 1988.

Decided Feb. 29, 1988.

GOOLSBY, Judge:

South Carolina National Bank ("SCN") brought these actions on a promissory note and for claim and delivery against the defendants Silks, a South Carolina limited partnership, and against Eric A. Brooks, W. Vaughan Davidson, and Frank E. Fowler as general partners of Silks and in their individual capacities. The defendants answered and counterclaimed for breach of contract and for violation of the South Carolina Unfair Trade Practices Act ("UTPA"). The trial judge directed a verdict for SCN on its claims and on the defendants' counterclaims. Silks and Fowler appeal. We reverse in part, affirm in part, and remand.

The issues on appeal relate to whether a written contract can be modified by a subsequent oral agreement, whether the evidence and the reasonable inferences to be drawn therefrom can support a finding that the parties entered into a subsequent oral agreement modifying the terms of the note sued on, and whether a mere breach of an oral agreement constitutes a violation of the UTPA.

On November 29, 1984, Silks and its general partners gave a note to First National Bank ("FNB") for $220,000 repayable in 10 quarterly payments of $22,000, plus interest. At the same time, Silks entered into an agreement with FNB giving it a security interest in the furniture, fixtures, and equipment used by Silks in its restaurant business at the Planter's Inn in Charleston.

SCN acquired the note when it merged with FNB.

Only one payment was made on the note and that occurred when the note was executed.

Silks and the general partners were two payments behind

on the note when, on June 17, 1985, Peter B. Read, a vice-president of SCN, met with the general partners and, among others, Fowler's attorneys, J. Nelson Irvine and Thomas S. Tisdale, Jr., Silks' accountant, Timothy M. Tyler, and John B. Hipp, a partner in Littlebrook Associates, the owner of the Planter's Inn. They discussed the indebtedness represented by the note.

Following the meeting, SCN and Fowler had prepared and forwarded to each other proposed notes modifying the terms of the note given by Silks and the general partners. None of the proposed notes were ever executed.

Three months later, SCN filed these actions alleging that the defendants were in default of the note and that it was entitled to possession of the personal property held by Silks as security for the note. The defendants, however, denied they were in default, claiming that they and SCN had orally agreed during the June 17, 1985 meeting to modify the terms of the note. The defendants also counterclaimed, alleging that SCN had breached the parties' oral agreement and, in so doing, had violated the UTPA.

A jury trial commenced on November 3, 1986; however, it ended when the trial judge granted SCN's motion for directed verdict on its claims and on the defendants' counterclaims.

I.

Silks and Fowler contend that the trial judge erred in concluding as a matter of law that the written contract between the parties could not be modified orally.

The note in question expressly provided that it could not be amended or modified "except by an instrument in writing executed by the holder of [the] note."

The trial judge, in addressing the issue of a modification, stated that "[in] this case clearly the original note required that any modification had to be in writing." He went on to find that the written contract [had] not [been] modified," thus rejecting the defendants' argument that a written contract could be modified orally.

Written contracts, however, may be orally modified by the parties, even if, as here, the writing itself prohibits oral modification. *Sanchez v. Tilley*, 285

S. C. 449, 330 S. E. (2d) 319 (Ct. App. 1985). The trial judge clearly erred, therefore, in holding that the note in issue could not be orally modified.

## II.

Silks and Fowler next contend that the trial judge erred in granting SCN's motion for directed verdict on its claims.

The trial judge expressly found that the parties did not enter into "another agreement."

Silks and Fowler argue that the evidence and its reasonable inferences support a finding that the parties orally agreed to modify the terms of the note.

In deciding a motion for directed verdict, the trial judge is not to weigh the evidence and determine the credibility of witnesses and of documents. *Young v. Bost,* 241 S. C. 289, 128 S. E. (2d) 118 (1962); 88 C.J.S. *Trial* § 257(2) and (3) at 649 and 651-52 (1955). Rather, the trial judge is to consider the evidence and all its reasonable inferences in the light most favorable to the nonmoving party and is to deny the motion if the evidence yields more than one inference. *Hilton Head Island Realty, Inc. v. Skull Creek Club,* 287 S. C. 530, 339 S. E. (2d) 890 (Ct. App. 1986).

In our opinion, the evidence and the reasonable inferences drawn from it yield competing inferences when viewed in the light most favorable to Silks and Fowler. One such inference is that SCN agreed to modify the note by extending the note's term, altering the note's payment schedule, and reducing the installment payment amount. For example, Hipp testified that Silks, Fowler, and SCN agreed on June 17, 1985, to restructure the note by allowing it to be repaid over a four-year term at the rate of $2,500 a month with an additional payment at the end of the term representing the unpaid balance. Irvine, Fowler, and Tyler testified similarly.

SCN, however, argues that there is no evidence that any consideration supported the alleged oral agreement modifying the note. *See* 17 Am. Jur. (2d) *Contracts* § 492 at 965 (1983) (an oral agreement rescinding a written contract must generally have the same elements of mutual consent and consideration as are necessary for the formation of

other informal contracts). We disagree.

The evidence and its reasonable inferences, particularly Fowler's, Hipp's, and Tyler's testimony, show that, as part of the oral agreement to modify the terms of the note, SCN also agreed to loan Fowler and Hipp $43,000 with which to pay off a debt owed by Silks to another creditor for certain restaurant equipment and that, on June 18, 1984, Fowler and Hipp, in their individual capacities, borrowed $43,000 from SCN, gave SCN their note therefor, and paid off Southern Scales, the creditor Silks owed for the equipment. SCN's position as a creditor improved as a result.

"Valuable consideration may consist either of some right, interest, profit or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *McPeters v. Yeargin Construction Company, Inc.*, 290 S. C. 327, 331, 350 S. E. (2d) 208, 211 (Ct. App. 1986). Fowler and Hipp obviously suffered a detriment when they personally paid off a creditor of Silks in reliance on the oral agreement. *See* 17 C.J.S. *Contracts* § 82 at 769-70 (1963) (a promise to pay the debt of a third person may constitute a valuable consideration for a contract where there is some new benefit such as a discharge of the debtor).

We, therefore, hold that the trial judge erred in directing a verdict for SCN on its claims.

### III.

Silks and Fowler argue that the trial judge erred in directing a verdict in SCN's favor on the defendants' counterclaim that alleges a violation of the UTPA. We think not.

The evidence supporting the defendants' UTPA counterclaim establishes nothing more than a breach of an oral agreement. A mere breach of contract does not constitute a violation of the UTPA. *Key Company, Inc. v. Fameco Distributors, Inc.*, 292 S. C. 524, 357 S. E. (2d) 476 (Ct. App. 1987), *cert, denied,* Davis' Advance Sheets, No. 1 at 2 (Ct. App. January 16, 1988); *see Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 290 S. C. 475, 351 S. E. (2d) 347 (Ct. App. 1987), *cert. denied,* 363 S. E. (2d) 688 (S. C. 1987) (wherein the court held in an action brought by one corporation against another that the UTPA is not available to address a private wrong where the

public interest is unaffected).

Reversed in part, affirmed in part, and remanded.

SHAW and CURETON, JJ., concur.