1121

Randy MOODY, Appellant v. Ted McLELLAN, Geer Drug Company, and Alco Standard Corporation, Respondents.

(367 S. E. (2d) 449)

Court of Appeals

158

*Terry E. Richardson, Jr., James H. Rion* and *Jane Matthews*, of *Blatt & Fales*, Barnwell, *for appellant.*

*G. Daniel Ellzey* and *Jonathan P. Pearson*, of *Ogletree, Deakins, Nash, Smoak & Stewart*, Columbia, *for respondents.*

Heard Oct. 19, 1987.

Decided March 28, 1988.

BELL, Judge:

This is an action arising out of an alleged wrongful discharge from employment. Randy Moody, the employee, sued his employer, Geer Drug Company, a division of Alco Standard Corporation; his supervisor, Ted McLellan; and Alco. He asserted causes of action for (1) breach of contract; (2) tortious interference with a contractual relationship; (3) intentional infliction of emotional distress; and (4) defamation. The defendants raised affirmative defenses, including the exclusive remedy provision of the Workers' Compensation Act. The circuit court granted summary judgment to the defendants on all causes of action. Moody appeals. We reverse the granting of summary judgment on the breach of

contract action. We affirm as to the other causes of action.

## I.

In March 1982, Geer hired Moody and his cousin, Ted McLellan, to help start and develop a new medical supply business named "Geer Health Services." Tucker Altman, a pharmacist in Charleston, originated the idea for the business and he did the hiring for Geer. Altman recruited Moody, McLellan, and other salesmen from Durr-Filauer, a competing medical supply house. During negotiations, they and Altman discussed a five-year guarantee of employment.

Before Moody accepted his position with Geer, Altman sent him a letter setting out the initial terms and conditions of his employment. Geer concedes the letter is a contractual document. Among other things, the letter states:

> [A] five year period must elapse before Geer Health Care Services can be properly analyzed and deemed a success of failure.

Altman admitted the salesmen requested a five-year guarantee of employment during negotiations. When explaining the letter, he said:

> Five years was mentioned, because in the conversation that we had earlier, five years was mentioned by the sales people who were being recruited. Otherwise, it would not have been in this letter.

> \* \* \* \* \* \*

> [T]he five years was mentioned in there by me, because they each wanted a five-year employment contract.... It might be ambiguous when it was written. But I wanted them, from the conversation and from the letter, to draw their own conclusions.

Viewing the evidence in the light most favorable to Moody, Altman knew Moody wanted a five-year contract. He also had reason to know Moody might interpret the letter as granting him five years of employment. Indeed, Altman put the reference to five years in the contract for the admitted purpose of encouraging Moody to attach his own meaning to it. In other words, the employer drafted the contract and

tendered it to the employee with the knowledge that the latter expected a definite term of five years employment.

Since the language of the instrument is the employer's, the court must construe it, if its meaning is ambiguous, against the drafter. *See Mid-Continent Refrigerator Co. v. Way*, 263 S. C. 101, 208 S. E. (2d) 31 (1974). Moreover, as a matter of law, if at the time the contract was entered one party understood the agreement in a particular sense, and the other party knew it to be so understood, then the undertaking is to be taken in that sense, if it is compatible with the language used. *See Street v. Chicago Wharfing and Storage Co.*, 175 Ill. 605, 41 N. E. 1108 (1895); *Coney v. Rockford Life Ins. Co.*, 67 Ill. App. (2d) 395, 214 N. E. (2d) 1 (1966); *United States Rubber Co. v. Silverstein*, 229 N. Y. 168, 128 N. E. 123 (1920); Restatement (Second) of Contracts § 20(2) (1981). The evidence in this case presented genuine issues of fact regarding what meaning Moody attached to the five-year provision of the contract and whether Geer knew or had reason to know of that meaning. Therefore, the judge erred in granting summary judgment.

The circuit judge acknowledged there was evidence that Geer agreed to employ Moody for five years, although he apparently disbelieved it. However, he concluded this fact was immaterial, because the deposition testimony of Moody and Altman established, in his mind, that Moody was not reciprocally bound to render services to Geer for a like period.[1] He, therefore, held, as a matter of law, that Geer could terminate the contract at will. This holding was erroneous for at least three reasons.

---

[1] The pertinent testimony included the following:

On cross examination Moody stated:

> Q: Now nobody ever told you that you were obligated to work there for ten years or five years or three years or anything like that, did they?
> A: No.

Similarly, Altman stated:

> Q: Regarding Mr. Moody's or any other salesman's ability to quit at any time, did you have any writing whatsoever which limited their ability to quit working for Geer?

First, in interpreting an ambiguous contract, the ■ court should adopt a construction imposing mutuality of obligation in preference to an obligation which is unilateral. *See Moran v. Standard Oil,* 211 N. Y. 187, 105 N. E. 217 (1914). Thus, when a contract of employment obligates one party for a definite term, absent clear evidence that the parties intended differently, the other party is impliedly bound for a like term. *Id.*

Second, the parties may always terminate a contract ■ voluntarily before the end of the term. The employee normally does this by offering his resignation, i.e., the surrender, relinquishment, or giving over of his employment. *Young v. Minton,* 49 Ga. App. 545, 176 S. E. 662 (1934). If the employer accepts, the contract is terminated. The fact that the contract is for a definite term does not prevent the employee from offering his resignation before the end of the term and he may do so without breaching the contract. *See Lemlich v. Board of Trustees of Harford Community College,* 282 Md. 495, 385 A. (2d) 1185 (Ct. App. 1978).

Third, a contract may provide that it shall come to an ■ end upon notice by one of the parties and such a stipulation, when fairly entered into, will be enforced. *See Morrissey v. Broomal,* 37 Neb. 766, 56 N. W. 383 (1893). There is no inconsistency between such a provision and an agreement granting employment for a definite term. *See Van Horn Drug Co. v. Noland,* 323 P. (2d) 366 (Okla. 1958). The circuit judge simply erred in supposing the contract must bind both parties for the same length of time.

In this case, the evidence, viewed as a whole, created different reasonable inferences as to Moody's "right" to "quit" the job. The testimony singled out by the circuit judge may simply have referred to the "right" of any employee to offer his resignation from a definite term of employment. It might have meant the five-year contract was terminable upon notice by Moody before expiration of the full term. Or it might have meant, as Geer contends, that

---

A: No writing or verbals.

Q: No writing or verbal agreement that they would have to work for a specific period of time?

A: I did not want them if they couldn't work with a clean, clear mind.

the parties agreed to an "at will" employment only. Given the ambiguous expressions of the parties, it was for the jury, not the judge, to decide which interpretation reflects their true intention at the time the contract was made.

Geer cites numerous cases,[2] dealing with employment at will, which it claims support the circuit judge's holding. Without exception, these authorities stand for the familiar rule that a contract for an indefinite or "permanent" employment is terminable at the will of either party. That rule does not apply where the employment is for a definite term, as Moody alleges in this case. Therefore, reliance on them is misplaced.

In summary, Moody's claim that he had a five-year contract with Geer presented a triable issue of fact. For this reason, it was error to grant summary judgment on the contract cause of action.

## II.

The circuit court dismissed Moody's cause of action for intentional infliction of emotional distress on two independent grounds: (1) the workers' compensation act provided Moody's exclusive remedy, which he had already successfully pursued; and (2) McLellan's actions were privileged, as a matter of law, so that no claim was stated.

The ruling that McLellan's actions were privileged is ■ a sufficient ground to support summary judgment. *See Richardson v. McGill*, 273 S. C. 142, 255 S. E. (2d) 341 (1979). Moody takes no exception to that ruling. An alternative ruling of a lower court that is not excepted to constitutes a basis for affirming the lower court and is not reviewable on appeal. *Folkens v. Hunt*, 290 S. C. 194, 348 S. E. (2d) 839 (Ct. App. 1986). Accordingly, we affirm without reaching the other issues the parties raise as to this cause of action.

---

[2] *Todd v. South Carolina Farm Bureau Mut. Ins.*, 276 S. C. 284, 278 S. E. (2d) 607 (1981); *Ross v. Life Ins. Co. of Virginia*, 273 S. C. 764, 259 S. E. (2d) 814 (1979); *Gainey v. Coker's Pedigreed Seed Co.*, 227 S. C. 200, 87 S. E. (2d) 486 (1955); *Orsini v. Trojan Steel Corp.*, 219 S. C. 272, 64 S. E. (2d) 878 (1951); *Parker v. Southeastern Haulers, Inc.*, 210 S. C. 18, 41 S. E. (2d) 387 (1947); *Shealy v. Fowler*, 182 S. C. 81, 188 S. E. 499 (1936).

## III.

The circuit court also dismissed Moody's cause of action for defamation on two alternate grounds: (1) because Moody failed to support his pleadings with facts that would be admissible in evidence; and (2) because the alleged statements were not defamatory as a matter of law.

Moody contends McLellan made four defamatory remarks about him while he worked for Geer.[3] He concedes he did not personally hear McLellan make the statements, but he testified in his deposition that others told him what McLellan said.[4] The circuit judge ruled that Moody's testimony about what McLellan said was not made upon personal knowledge and refused to consider it in deciding the motion for summary judgment. Moody presented no other evidence that McLellan had made the alleged statements. McLellan, on the other hand, introduced his own affidavit denying, of his own personal knowledge, that he had made any of the alleged statements.

When a motion for summary judgment is made and supported by such facts as would be admissible in evidence at trial, the adverse party may not rest upon the mere allegations of his pleadings. Rule 56(e), S.C.R. Civ. P. Instead his response to the motion must set forth specific facts, admissible in evidence, showing there is a genuine issue for trial. *Id.* If he does not so respond, summary judgment should be entered against him. *Id.*

In this case, Moody failed to come forward with competent evidence that McLellan actually made the alleged statements. Thus, there was no issue of fact to be resolved. We

---

[3] Moody presented no argument in his brief concerning three of the alleged statements. Issues not argued in the brief are deemed abandoned on appeal. *Sumner v. Pruitt*, 281 S. C. 63, 314 S. E. (2d) 150 (Ct. App. 1984).

[4] Moody testified in his deposition that Jacqueline Keene, an employee of Geer, told him about an incident in which McLellan and she were trying to locate a client file. Keene suggested they check with Moody to see if he had a copy of it. Moody related what Keene described as McLellan's reply in the following words.

> [H]e [McLellan] made some type of saying, I don't recall the exact [sic], but it was like, your [sic] know, almost like it'll be a cold day in hell if you think he's got it.

Before us, Moody's claim for defamation rests on this single statement.

need not reach the other ground of the judge's ruling, because Moody's failure to support his defamation claim with proper evidence is a sufficient justification for affirming the summary judgment against him.

For the reasons stated, we affirm the judgment dismissing Moody's claims for intentional infliction of emotional distress and for defamation. We reverse the granting of summary judgment on the breach of contract claim and remand for trial of that issue.

Affirmed in part, reversed in part and remanded.

SHAW and CURETON, JJ., concur.

