1719

Harold BAKER and Sally Baker, Respondents v. Murray A. CHAVIS, Charles L. Cooke, d/b/a Golden Sands Beach Club and C's Enterprises, Inc., of whom Murray A. Chavis and Charles L. Cooke are, Appellants.

(410 S.E. (2d) 600)

Court of Appeals

*David H. Breen*, of Myrtle Beach and *William Paul Young*, North Myrtle Beach, *for appellants.*

*Spero C. Keretses* and *William P. Hatfield*, both of *The Hyman Law Firm*, Florence, *for respondents.*

Heard Oct. 7, 1991; Decided Oct. 28, 1991.

Rehearing Denied Nov. 18, 1991.

GOOLSBY, Judge:

Harold and Sally Baker's causes of action against Murray A. Chavis and Charles Cooke, doing business as Golden Sands Beach Club, and against C's Enterprises, Inc., for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Unfair Trade Practices Act (UTPA), S.C. Code Ann. §§ 39-5-10 *et seq.* (1976), resulted in a jury verdict against Chavis and Cooke, doing business as Golden Sands Beach Club, in the Bakers' favor on all three causes of action in the amount of $8,470 actual damages and $10,000 punitive. The trial judge, pursuant to section 39-5-140 and based on a finding that Chavis and Cooke, doing business as Golden Sands Beach Club, wilfully violated the UTPA, trebled the actual damages and awarded attorney fees to the Bakers in the amount of $11,000. Chavis and Cooke employ eight exceptions to attack the judgment of $46,410 on appeal. We affirm.

On June 24, 1978, the Bakers purchased from Golden Sands Beach Club a membership entitling them to use two weeks each year for a twenty-year period certain motel "accommodations" located on South Ocean Boulevard in Myrtle Beach. The written purchase agreement required the Bakers to pay the club a purchase price of $4,500. It also required them to pay yearly membership dues. Any failure to pay the member-

ship dues, which were payable semi-annually in advance, would result, the purchase agreement provided, in a forfeiture of all membership rights. The membership dues were to be computed annually and could "only be increased by the owner at the same or lesser rate as the increase of the U.S. Government Consumer Price Index."

Several years later, Ron and Dot Greene, the club's operators, notified the Bakers and other club members they were selling their "equity in the Golden Sands Beach Club" and "Mr. and Mrs. Charles L. Cooke and Mr. and Mrs. Murray A. Chavis" were assuming their "role and position with the Golden Sands Beach Club," "effective January 9, 1984." The "equity" the Greenes sold necessarily included the purchase agreements signed by the Bakers and others.

In August the following year, the Bakers received a notice from James B. Van Osdell, an attorney representing the "Golden Sands Beach Club management," that their membership dues, "beginning January, 1986," were being increased "approximately" 50 per cent even though the Consumer Price Index for the year 1985 showed an increase of only 4.8 per cent.

William P. Hatfield, an attorney representing the Bakers, thereafter wrote Van Osdell. His letter, dated October 8, 1985, stated the proposed increase in membership dues "would violate" the provision of the purchase agreement relating to increases in membership dues and it advised Van Osdell of the Bakers' objection to the proposed increase. Hatfield's letter concluded, "I would appreciate hearing from you at your earliest convenience" and "[a]waiting your reply, I remain. . . ."

Van Osdell did not respond to Hatfield's letter. The Bakers, however, heard from the club. In a notice that began "HAPPY HOLIDAYS," the club notified the Bakers that, "[a]s per our membership dues agreement, your semi-annual payment in the amount of $90.00 is due January 15, 1986" and "[p]lease be sure that we receive your dues on time to avoid a late charge."

Rather than pay the ninety-dollar sum, the Bakers mailed the club a check for sixty dollars, the amount properly due. Cooke immediately acknowledged the check but asked the Bakers to consider paying the 50 per cent increase on a "volunteer basis." They refused to do so.

On March 18, 1988, Cooke, on stationery entitled "Golden Sands Beach Club," sent the Bakers a letter informing them that they were "no longer a Member of Golden Sands Beach Club" because they had not responded to "our Default Notice concerning your unpaid January 1988 Maintenance Dues, which was mailed February 11, 1988." Cooke cited "Section III" of the purchase agreement as authority for the termination of their membership.

The Bakers, however, never received a default notice from the club about any failure to pay their 1988 semi-annual dues. Moreover, Sally Baker mailed checks to the club on January 12, 1988 and in July 1988 for payment of their semi-annual dues. Neither check was ever cashed.

Sally Baker went to Myrtle Beach in September 1988 in an attempt to use the club's accommodations. The motel manager refused to allow her to check in. He told her, "Mr. Cooke said that you couldn't because you didn't pay your January or your July dues for '88' . . . [b]ut if you want to pay $71.00 for January, $71.00 for July, a 10-dollar late fee, and a 200-dollar reinstatement fee, you can check in."

This action followed.

At trial, the Bakers offered evidence that Richard and Arlene Smith had a similar experience with Golden Sands Beach Club. Like the Bakers, the Smiths refused to pay the increased membership dues, made their 1988 semi-annual payments, did not receive a default notice of unpaid semi-annual membership dues, and had their membership cancelled by the club for nonpayment of semi-annual membership dues.

## I.

We need not address the exceptions Chavis and Cooke take to the refusal of the trial judge to direct a verdict at the end of the Bakers' case, Exception Nos. 2, 3, and 4. Chavis and Cooke waived the right to object to the denial of this motion when they presented evidence after the trial judge denied it. H. LIGHTSEY & J. FLANNIGAN, SOUTH CAROLINA CIVIL PROCEDURE at 370 (1985).

## II.

By Exception No. 5, Chavis and Cooke raised the issue of whether the trial judge erred in not granting their motion for directed verdict at the close of all the evidence on the issue of Chavis' and Cooke's personal liability. The exception's assignment of error asserts "that the testimony presented showed that [Chavis and Cooke] conducted business in the name of C's Enterprises, Inc., and not in [their] individual capacit[ies]." Whether the evidence is inferable of only the conclusion that Chavis and Cooke conducted business as Golden Sands Beach Club in the name of C's Enterprises and not in their individual capacities is not, however, an issue we need to decide.

The trial judge, in denying their motion for directed verdict, ruled the evidence could support the conclusion that Chavis and Cooke were estopped from claiming that they individually had not made the contract between Golden Sands Beach Club and the Bakers their own. No exception challenges this ruling on appeal. Also, when instructing the jury, the trial judge advised "that a person who holds himself out and leads others to believe that he is a party to that contract . . . cannot then repudiate that he is a party to the original contract." Chavis and Cooke made no objection to the charge at trial and include no exception to the charge on appeal.

Chavis' and Cooke's failures to include an exception to the trial judge's ruling on their motion for directed verdict, to object to the trial judge's jury instruction, and to include an exception directed to the instruction on the issue of whether they were estopped to deny liability under the contract between Golden Sands Beach Club and the Bakers preclude us from considering their argument that they were not personally liable under the contract. *See Moody v. McLellan,* 295 S.C. 157, 367 S.E. (2d) 449 (Ct. App. 1988) (an alternative ruling of the trial court in granting summary judgment that was not excepted to constitutes a basis for affirming the trial court and is not reviewable on appeal); *Cash v. Kim,* 288 S.C. 292, 342 S.E. (2d) 61 (Ct. App. 1986) (the Court of Appeals will not set aside a general verdict involving two or more issues where an unchallenged alternative theory of liability supports the verdict); *Designer Showrooms, Inc. v. Kelley,* — S.C. —, 405 S.E. (2d) 417 (Ct. App. 1991) (an instruction to which appel-

lant made no objection at trial becomes the law of the case); *Amick v. Hagler*, 286 S.C. 481, 334 S.E. (2d) 525 (Ct. App. 1985) (the failure of an appellant to raise a question by way of an exception constitutes a waiver of the issue).

### III.

By Exception No. 6, Chavis and Cooke charge the trial judge with error in not directing a verdict on the UTPA cause of action. The precise error assigned by the exception is "that acquiring a leasehold interest is not engaging in trade or commerce within the definition contained in Section 39-5-10(b) of the South Carolina Code of Laws (1976) as amended."

The question of whether one engages in trade or commerce within the meaning of the UTPA by "acquiring a leasehold interest" raises only the narrow issue of whether the legislature intended the definition of the words "trade" and "commerce" set forth in section 39-5-10(b) to be exclusive.[1] It did not so intend.

Section 39-5-10(b) reads:

> *"Trade"* and *"commerce"* shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.

The statute's use of the words "shall include" clearly suggests the legislature did not intend to limit "trade" and "commerce"

---

[1] Although Chavis and Cooke advance other arguments under the question in their brief identified with Exception No. 6, we cannot go beyond the particular issue raised by the exception. *See State v. Austin*, 409 S.E. (2d) 811 (S.C. Ct. App. 1991) (Davis Adv. Sh. No. 23 n. 1 at 29) ("Our Supreme Court has told us, in no uncertain terms, that we are allowed to address only those issues properly before us."). One of these arguments concerns whether their actions had an impact upon the public interest. *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986); Note, *Impact on Public Necessary to Invoke Unfair Trade Practices Act*, 39 S.C.L. REV. 6 (1987). Exception No. 6 does not fairly raise this issue and Chavis and Cooke include no other exception preserving it for our consideration. *See Orange Bowl Corp. v. Warren*, 300 S.C. 47, 386 S.E. (2d) 293 (Ct. App. 1989) (the Court of Appeals cannot address on appeal a proposition not raised by any exception).

to only the listed transactions. *See North Carolina Turnpike Authority v. Pine Island, Inc.*, 265 N.C. 109, 143 S.E. (2d) 319 (1965) (the word "includes" is ordinarily a word of enlargement and not of limitation); *United States v. Gertz*, 249 F. (2d) 662 (9th Cir. 1957) (the word "including" is not a word of all embracing definition but an illustrative application of general principles).

The words "trade" and "commerce," as used in the UTPA, are synonymous. *See Werth v. Fire Companies' Adjustment Bureau*, 160 Va. 845, 171 S.E. 255 (1933), *cert. denied*, 290 U.S. 659, 54 S. Ct. 74, 78 L. Ed. 570 (1933) (construing Virginia's anti-trust laws). Broadly defined, the word "trade" includes the business of buying as well as the business of selling. *May v. Sloan*, 101 U.S. 231, 237, 25 L. Ed. 797, 799 (1879). Obviously, therefore, the acquisition of a lease, when, as here, it is done by purchasing a club's "equity," constitutes "trade" and "commerce" within the meaning of the UTPA.

## IV.

Finally, we do not address Exception Nos. 1, 7, and 8.[2]

Exception No. 1, which concerns the failure of the trial judge to grant the motion by Chavis and Cooke for summary judgment, was not argued in their brief and therefore must be considered as abandoned. *Beach Co. v. Charleston County School District*, 263 S.C. 7, 207 S.E. (2d) 406 (1974).

Exception Nos. 7 and 8, which relate to the trial judge's failure to grant the motion by Chavis and Cooke either for judgment notwithstanding the verdict or for new trial, contain multiple assignments of error and cannot be considered. *See Kennedy v. Custom Ice Equipment Co., Inc.*, 271 S.C. 171, 246 S.E. (2d) 176 (1978) (an exception containing more than one assignment of error violates Rule 4, Section 6 of the Supreme Court Rules and will not be reviewed by the Supreme Court); *see* S.C. Sup. Ct. R. 4, § 6 ("Each exception

---

[2] *See Young v. Century Lincoln-Mercury, Inc.*, 302 S.C. 320, —, 396 S.E. (2d) 105, 109-10 (Ct. App. 1989) (noting that the Supreme Court in *Connolly v. People's Life Ins. Co. of South Carolina*, 299 S.C. 348, 384 S.E. (2d) 738 (1989), "emphatically directed that [the Court of Appeals] enforce the procedural rules of appeal" regarding exceptions).

must contain a concise statement of one proposition of law or fact which this Court is asked to review. . . .").

Affirmed.

SANDERS, C.J., and GARDNER, J., concur.

