23709

Sally G. YOUNG, Petitioner v. CENTURY LINCOLN-MERCURY, INC., Respondent.
(422 S.E. (2d) 103)

Supreme Court

*O.G. Calhoun,* of *Haynsworth, Marion, McKay and Guerard,* Greenville, *for petitioner.*

*Harvey G. Sanders, Jr.,* and *Natalma M. McKnew,* of *Leatherwood, Walker, Todd & Mann, P.A.,* Greenville, *for respondent.*

Heard June 10, 1992.

Decided Aug. 31, 1992.

*Per Curiam:*

We granted certiorari in this case to review the Court of Appeals' decision which affirmed the judgment of the circuit court and the subsequent order entered by the Court of Appeals, *ex mero motu,* requiring Petitioner Sally G. Young to endorse the $9,230.11 check which was the subject of the cause of action for conversion. *See Young v. Century Lincoln-Mercury, Inc.,* 302 S.C. 320, 396 S.E. (2d) 105 (Ct. App. 1989), and Ct. App. Order dated August 21, 1990. We affirm in part and reverse in part.

Petitioner's 1985 Honda automobile was involved in a wreck on December 9, 1986. American Mutual Insurance Company (American Mutual), the liability insurance carrier of the at-fault driver, gave petitioner the option of either declaring the car a total loss and accepting a settlement of $11,500 or having it repaired. Based upon an estimate by Respondent Century Lincoln-Mercury, Inc., that her automobile could be repaired as good as new for about $6,900, she authorized the respondent to repair the car.

After completing about half of the work, respondent determined that it would be necessary to make additional repairs costing $2,340.11 over the initial repair estimate. The respondent communicated with American Mutual regarding the added costs and proceeded to complete all the work without contacting the petitioner for her approval to make the additional repairs.

Thereafter, American Mutual delivered to the respondent its check made payable to the petitioner for $9,230.11. The petitioner went to respondent's shop after they called and informed her that the car was ready, that the total repair bill was $9,230.11, that they had the insurance check and needed her endorsement. The petitioner test drove the car, had a minor problem with the steering column corrected, then took possession of the car and departed without endorsing the check. The petitioner did not respond to requests from the respondent to come in and give her endorsement nor did she otherwise pay the repair bill.

When petitioner complained to Frank Mims, president of the respondent company, that she was not informed of the additional repairs before the work was done, Mims advised her that it was the company's custom to inform only the insurance company when additional repairs were required, and not the customer.

Young instituted this action alleging (1) violation of S.C. Code Ann. § 39-5-10, *et seq.*, the South Carolina Unfair Trade Practices Act (UTPA), (2) fraud and deceit, and (3) conversion of the insurance check. The respondent answered by way of general denial and asserted a counterclaim for judgment against the petitioner in the amount of $9,230.11, but did not seek to have her endorse the check.

The trial judge directed a verdict in the amount of $9,230.11 for the petitioner on her conversion claim, directed a verdict in favor of the respondent on the fraud claim, and directed a verdict in the amount of $6,970.75 for the respondent on its counterclaim for repairs. The cause of action for violation of the UTPA and the issue of punitive damages in the conversion action were submitted to the jury. The jury returned a verdict for the petitioner, with a finding of willfulness on the part of the respondent, in her cause of action for violation of the UTPA. She was awarded actual damages of $3,500, which was trebled to $10,500 by the trial judge. The jury found for the petitioner punitive damages in the amount of $4,500 on the conversion action. At a post-trial hearing, the trial judge awarded attorney fees of $7,352.50 in the UTPA action.

The respondent appealed. The Court of Appeals affirmed as to violation of the UTPA, holding that respondent's custom, together with the facts and circumstances of this case, constituted an unfair trade practice. It declined to rule on the remaining issues, finding that the exceptions did not comply with Supreme Court Rules relating to appellate procedure. Nevertheless, the Court of Appeals ruled that even if the questions had been properly presented, they would have been found to be without merit.

The respondent petitioned for a rehearing, and filed a motion to supplement the transcript of record with the trial judge's instructions to the jury regarding conversion. The motion and the petition were granted. Upon reviewing the judge's charge, the Court of Appeals issued its order amending its previous opinion, *ex mero motu*, to require the petitioner to endorse the check based upon the following portion of the trial judge's charge to the jury:

> . . . Now the third cause of action was in conversion, I have directed a verdict for the plaintiff for the conversion of the check, that is I am directing a verdict for actual damages in the amount of the check, and the defendant will own the check . . .

The Court of Appeals dismissed the remaining allegations of the petition for rehearing. This review followed.

Before this Court, the petitioner alleges the Court of Appeals erred in amending the verdict, *ex mero motu*, and in re-

quiring her to endorse the check.

The petitioner argues that at the time of the order, the check was at least three years old and the bank upon which it was drawn was no longer obligated to honor presentment. The petitioner maintains (1) that her endorsement could subject her to legal action under a warranty theory and result in an injustice because she, the party not at fault, would be required to pay her own repair bill; (2) that the trial judge had ruled, as matter of law, that the respondent was entitled to recover only $6,970.75; and (3) that it was improper for the Court of Appeals to require her endorsement of the check when the respondent did not, in its pleadings, during the trial, or by way of Rule 59 motions request such relief. Furthermore, petitioner argues that she does not now and never had possession of the check.

The respondent asserts that the check was delivered to it to avoid a windfall to the petitioner, and that she never paid for the repairs.

After reviewing the trial judge's charge which stated that he was directing a verdict for the petitioner in the actual amount of the check "and the defendant [respondent] will own the check," the Court of Appeals determined that it was necessary for the petitioner to endorse the check so as to effectuate the judgment of the trial court. Relying upon 5 C.J.S. *Appeal And Error* § 1520 (1958), the Court of Appeals issued its order dated August 21, 1990, amending its opinion.

We interpret the judgment of the trial judge as intending to place in the petitioner's possession the value of the check owned by her, the control over which she was wrongfully denied by the respondent's conversion thereof. *Restatement of Torts (Second)* § 222A comment c (1965) provides:

> . . . When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale. Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.

Therefore, once the respondent satisfies the judgment of $9,230.11 to the petitioner, the respondent becomes the lawful

owner of the $9,230.11 check which it converted. Beyond the statement that the respondent "would own the check," we note the trial record is silent as to inferences of any further rights conferred or duties imposed which the trial court intended with regard to the check in controversy.

The trial court was specific in absolving the respondent of responsibility for fraudulent conduct and in directing a verdict of $6,970.75 for the respondent to ensure that the petitioner paid appropriately for the goods and services she contracted to purchase. We find that authorization to perform the additional repairs at a cost over the amount of the initial estimate arose out of a separate and independent agreement between the respondent and American Mutual, and petitioner bears no obligation to pay costs in excess of the judgment against her.

Moreover, this Court concludes that the endorsement of the petitioner is not necessary to effectuate the judgment of the trial court. We conclude that the ends of justice do not require the petitioner to affix her endorsement and subject herself to a position of peril occasioned by the wrongful conduct of other parties committed against the interest of the petitioner.

In view of the disposition we deem appropriate under the facts of this case, we find it unnecessary to address the gravamen of the issues raised at this stage of the appeal.

Accordingly, this Court affirms the opinion of the Court of Appeals and so much of the order of the Court of Appeals as awards the check for $9,230.11 to the respondent upon satisfaction of the judgement of $9,230.11 in favor of the petitioner. We reverse that portion of the order which directs the petitioner to affix her endorsement and provide that the check be released from the record and delivered without endorsement to the respondent upon satisfaction of the judgment.

Affirmed in part; reversed in part.