2224

DAISY OUTDOOR ADVERTISING COMPANY, INC., Appellant v.
Dean ABBOTT, d/b/a Abbott Company Outdoor Advertising, Respondent.

(451 S.E. (2d) 394)

Court of Appeals

*William G. Rhoden* of *Winter & Rhoden*, Gaffney, *for appellant.*

*J. Edwin McDonnell*, Spartanburg, *for respondent.*

Heard May 11, 1994.

Decided Sept. 6, 1994; Reh. Den. Dec. 19, 1994.

GOOLSBY, Judge:

Daisy Outdoor Advertising Company, Inc. brought this action for interference with an existing contractual relationship against Dean Abbott, who does business as Abbott Company Outdoor Advertising. Abbott counterclaimed for interference with existing contractual relationships and for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 to -350 (1985 and Supp. 1993) (UTPA). The trial judge, sitting without a jury, found against Daisy on its claim and found in Abbott's favor on Abbott's counterclaims. Under the UTPA counterclaim, the trial court awarded Abbott $23,025 in treble damages and $5,000 in attorney fees. Daisy appeals. We affirm in part, reverse in part, and remand.

Because this appeal involves actions at law tried by a judge without a jury, we must affirm the trial judge's factual findings unless there is no evidence that reasonably supports the trial judge's findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). Moreover, we will not disturb the trial judge's findings of fact that depend on the credibility of witnesses. *Davis v. Fowler*, 17 S.C. 590 (1882).

Daisy and Abbott are competitors in the outdoor advertising business. They rent billboards, mostly along interstate highways in South Carolina.

The location and use of billboards placed along South Carolina interstate highways are governed by the South Carolina Highway Advertising Control Act, S.C. Code Ann. §§ 57-25-110 to -710 (1991 and Supp. 1993). Under § 57-25-140(E) (1991), a billboard may not be built within 500 feet of another billboard. Billboards that advertise the sale or lease of the property on which they are located, however, are not subject to regulation. § 57-25-140 (A)(5) and (D) (1991).

In 1986, Daisy purchased property along Interstate-85 for the purpose of putting up a billboard. The property adjoined property owned by Jay Yang Designs, Ltd. An existing billboard owned at the time by the Pettit Estate stood on the Yang property. The distance from the billboard on the Yang property to any point on the Daisy property measured less than 500 feet. Because § 57-25-140(E) prohibited Daisy from lawfully erecting a billboard on its property as long as the Pettit Estate's billboard stood where it did, Daisy sought to lease the Yang property beginning in May 1988.

Daisy contends it later entered into a lease contract with

Yang, the contract that forms the basis for its cause of action against Abbott for interference with an existing contractual relationship.

Abbott, however, also claims to have leased the Yang property.

Abbott acquired the Pettit Estate's billboard in October 1986 and leased the property from Yang in March 1987, after obtaining a permit for the billboard. The term of Abbott's lease was to end on April 30, 1988. On February 26, 1988, Abbott received a letter from a Yang employee reminding Abbott about the expiration date of Abbott's lease. Abbott, however, continued to use the billboard beyond that date and renewed its lease with Yang on May 19, 1988.

Like Daisy, Abbott owned property along Interstate-85. Two billboards that stood on Abbott's property form the basis for Abbott's causes of action against Daisy for interference with existing contractual relationships and for violation of the UTPA.

Abbott rented one billboard to Hamrick's from 1987 until 1990. Daisy owned the property next to the Hamrick's billboard. Because § 57-25-140(E) precluded Daisy from putting a billboard on its property, Daisy asked Abbott to share with it one side of the Hamrick's billboard. Abbott refused. Thereafter, Daisy built an unregulated "For Sale" sign that blocked the view of the Hamrick's billboard from Interstate-85. Hamrick's cancelled its rental contract with Abbott because of the obstruction.

Abbott rented the other billboard to Clarkson Industrial Movers from 1989 until 1990. Daisy was a part-owner of the property next to the Clarkson billboard. A radio station leased the property from Daisy. After Abbott erected its billboard, Daisy obstructed the southbound view of the billboard with another outdoor billboard that advertised the radio station. The billboard violated the outdoor advertising code, so Daisy later changed its billboard to an unregulated "For Sale" sign. Because the sign obstructed the southbound view of Abbott's billboard, Abbott moved the Clarkson advertisement to another location.

I.

Daisy first appeals from the trial judge's finding that Abbott did not interfere with Daisy's purported contract with Yang.

South Carolina law recognizes a tort cause of action for interference with an existing contractual relationship. *DeBerry v. McCain*, 275 S.C. 569, 274 S.E. (2d) 293 (1981). There can be n no cause of action for interference with an existing contractual relationship, however, if there is no contract to begin with. F. patrick Hubbard and Robert L. Felix, *The South Carolina Law of Torts*, at 307 (1990).

Here, the trial judge found Daisy had no contract with Yang with which Abbott could have interfered. We cannot quarrel with this finding.

Daisy was unable to produce evidence satisfactory to the trial judge to prove that it had entered into any lease contract with Yang *before* Abbott entered into its lease contract with Yang on May 19, 1988. Joey Lemmons, a part-owner of Daisy, testified he met with a Yang employee to discuss Daisy's leasing the property from Yang. He could not recall, however, if this meeting took place in February, April, or June 1988. Moreover, Daisy's copy of the lease contract that Daisy claimed it had with Yang was undated. Although Yang's copy of this contract was dated May 2, 1988, someone other than the person who signed the contract had dated it. The employee who signed this copy for Yang could not remember the date when she signed it.

## II.

Daisy next appeals the trial judge's findings that Daisy intentionally interfered with Abbott's contracts with Hamrick's and Clarkson by blocking Abbott's billboards with "For Sale" signs. We hold there is evidence that reasonably supports the trial judge's findings in these regards.

The evidence suggests Daisy knew Abbott had advertising contracts with third persons before Daisy erected its "For Sale" signs. It also suggests Daisy knew its "For Sale" signs blocked the view of Abbott's billboards. There is no evidence that shows Daisy could not have placed its "For Sale" signs elsewhere on its tracts to avoid blocking the view of Abbott's billboards.

## III.

Daisy argues the trial judge erred in finding Daisy violated

the UTPA because there was no showing that Daisy's actions impacted upon the public interest. We agree.

An unfair method of competition or an unfair or deceptive act or practice in the conduct of any trade or commerce that affects only the parties to the controversy provides no basis for an action under the UTPA. *See Key Co. v. Fameco Distribs.*, 292 S.C. 524, 528, 357 S.E. (2d) 476, 478 (Ct. App. 1987) (no UTPA violation held shown where the dispute "involved nothing more than a breach of contract that affected no one but the parties to the contract"). To be actionable under the UTPA, an unfair method of competition or an unfair or deceptive act or practice must have an "impact on the public interest." *Florence paper Co. v. Orphan*, 298 S.C. 210, 213, 379 S.E. (2d) 289, 291 (1989); *Noack Enters. v. Country Corner Interiors*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986); Michael R. Smith, *Recent Developments Under the South Carolina Unfair Trade Practices Act*, 44 S.C. L. Rev. 543 (1993); *see Money Savers Pharmacy v. Koffler Stores (Western) Ltd.*, 37 Wash. App. 602, 682 P. (2d) 960, 965 (1984) ("a necessary element of an unfair competition claim brought under [the Washington Consumer Protection Act] is that the defendant's conduct is 'injurious to the public interest' "). Expressed differently, the UTPA "is not available to redress a private wrong where the public interest is unaffected." *Noack*, 290 S.C. at 479, 351 S.E. (2d) at 350; *LaMotte v. Punch Line of Columbia*, 296 S.C. 66, 370 S.E. (2d) 711 (1988). To satisfy the "affecting the people of this State" requirement, a plaintiff must show that the acts alleged *"adversely* affect the public." *Noack*, 290 S.C. at 480, 351 S.E. (2d) at 350 (emphasis added); *McTeer v. Provident Life and Accident Ins.*, 712 F. Supp. 512 (D.S.C. 1989).

Abbott produced evidence, and the trial judge found, that Daisy's conduct affected the public interest because it has the potential for repetition and because the conduct occurred "in a business setting." Merely offering evidence, however, that shows a wrongful act has the potential for repetition or that it occurs in the course of business is not enough to establish a violation of the UTPA if, as the evidence shows here, the conduct adversely affects only the parties involved. *See Key Co.*, 292 S.C. at 528, 357 S.E. (2d) at 478. For the UTPA to apply, the conduct must be shown to have had an

adverse effect on the public. *Noack*, 290 S.C. at 479, 351 S.E. (2d) at 350.

Although there is evidence that shows Abbott moved the Clarkson advertisement to another location and Hamrick's cancelled its contract with Abbott because of Daisy's actions, there is no evidence either that the relocation of the Clarkson advertisement adversely affected Clarkson or that the cancelation of the Hamrick's advertising contract with Abbott adversely affected Hamrick's; and although there is an inference that Daisy has competitors other than Abbott, there is no evidence that suggests Daisy could obstruct any of their billboards or otherwise adversely affect them.

Without proof of specific facts disclosing that any of Abbott's customers, any of Daisy's other competitors, or, for that matter, any other members of the public were adversely affected by Daisy's actions or that they were likely to be, all we are left with is a "speculative [claim] of adverse public impact" and that will not suffice for a recovery under the UTPA. *Omni Outdoor Advertising v. Columbia Outdoor Advertising*, 974 F. (2d) 502, 507 (4th Cir. 1992); *Money Savers Pharmacy*, 682 P. (2d) at 966.

## IV.

Daisy argues the trial judge should have reduced Abbott's damages by the amount of lighting bills that Abbott avoided having to pay after Hamrick's stopped using Abbott's billboard. Abbott admitted it saved between $30 and $50 per month for a seven-month period on its power bill when it stopped displaying Hamrick's advertisement. The trial judge refused to consider these cost savings because he viewed them as "rather negligible."

The fact that the cost savings may have been "rather negligible," however, is not a valid basis for not considering them. *Cf.* 25 C.J.S. *Damages* § 90, at 976 (1966) (earnings that a plaintiff would have made had the defendant not breached the contract must be deducted from the amount awarded the plaintiff for lost profits). The trial judge should have considered the cost savings regardless of their amount.

We have considered Daisy's remaining argument that the trial judge erred in finding Abbott sustained damages because of Daisy's obstruction of the Clarkson sign. We hold this argu-

ment has no merit and does not warrant further consideration.

Accordingly, we affirm the trial judge's award of $7,675 in actual damages for intentional interference with existing contractual relationships, reverse the trial judge's trebling of these damages and his award of attorney fees under the UTPA, and remand the award of actual damages for the trial judge to determine, based upon the existing record, Abbott's light bill savings for the months in question and to subtract what he finds to be the appropriate amount of savings from Abbott's award of $7,675 in actual damages.

Affirmed in part, reversed in part, and remanded.

LITTLEJOHN, Acting Judge, concurs.

CONNOR, J., concurs in part and dissents in part in a separate opinion.

CONNOR, Judge, concurring in part and dissenting in part:

I concur in parts I., II., and IV. of the majority opinion.

I respectfully dissent from part III., which holds Abbott made no showing Daisy's actions impacted upon the public interest. This holding is contrary to the plain language of the South Carolina Unfair Trade Practices Act, the case law of South Carolina, and the facts of this case.

The UTPA provides, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

S.C. Code Ann. § 39-5-20(a) (1985). "Trade" and "commerce" are defined terms under the UTPA:

> "*Trade*" and "*commerce*" shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal and mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.

*Id.* § 39-5-10(b) (1985) (underscored emphasis added).

The UTPA is not available to redress disputes between two

private parties unless the public interest is affected. *Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E. (2d) 289 (1989); *LaMotte v. Punch Line of Columbia Inc.*, 296 S.C. 66, 370 S.E. (2d) 711 (1988); *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986).

I first observe that many of the leading South Carolina UTPA cases do not address the issue of impact on the public interest. *See Fields v. Yarborough Ford, Inc.*, 307 S.C. 207, 414 S.E. (2d) 164 (1992); *Ward v. Dick Dyer & Associates, Inc.*, 304 S.C. 152, 403 S.E. (2d) 310 (1991); *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 363 S.E. (2d) 691 (1988); *Baker v. Chavis*, 306 S.C. 203, 410 S.E. (2d) 600 (Ct. App. 1991); *Potomac Leasing Co. v. Bone*, 294 S.C. 494, 366 S.E. (2d) 26 (Ct. App. 1988); *Bocook Outdoor Media, Inc. v. Summey Outdoor Advertising, Inc.*, 294 S.C. 169, 363 S.E. (2d) 390 (Ct. App. 1987), *overruled by O'Neal v. Bowles*, — S.C. —, 431 S.E. (2d) 555 (1993); *Payne v. Holiday Towers, Inc.*, 283 S.C. 210, 321 S.E. (2d) 179 (Ct. App. 1984).

In a number of cases, however, our Courts have found an impact upon the public interest. In *Haley Nursery Co. v. Forrest*, 298 S.C. 520, 381 S.E. (2d) 906 (1989), a commercial nursery's customer invoices contained a printed misrepresentation. The Supreme Court held the nursery's "breach of warranty impacts on the public interest because of the potential for publication of these misrepresentations to other [commercial] consumers." *Id. See also Goiser v. Harper*, 307 S.C. 64, 413 S.E. (2d) 845 (Ct. App. 1991) (investors brought action against promoter of tax shelter scheme); *Young v. Century Lincoln-Mercury, Inc.*, 302 S.C. 320, 396 S.E. (2d) 105 (Ct. App. 1989), *modified*, 309 S.C. 263, 422 S.E. (2d) 103 (1992) (dealer practice of notifying insurance company only (not owner of car) of increased repair charges where insurance company is liable); *Barnes v. Jones Chevrolet Co.*, 292 S.C. 607, 358 S.E. (2d) 156 (Ct. App. 1987) (padding of auto bills).

The cases discussed above are clearly distinguishable from the following cases, in which our Courts found no impact upon the public interest because the controversies arose out of mere breaches of contracts between the parties. *See Ardis v. Cox*, — S.C. —, 431 S.E. (2d) 267 (Ct. App. 1993), *cert. denied* (1994); *Columbia East Associates v. Bi-Lo, Inc.*, 299 S.C. 515,

386 S.E. (2d) 259 (Ct. App. 1989); *South Carolina National Bank v. Silks*, 295 S.C. 107, 367 S.E. (2d) 421 (Ct. App. 1988); *Noack Enterprises v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986); *Key Co. v. Fameco Distributors, Inc.*, 292 S.C. 524, 357 S.E. (2d) 476 (Ct. App. 1987).

Only two reported South Carolina UTPA cases have, for reasons other than mere breach of contract, found no impact on the public interest. In *Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E. (2d) 289 (1989), Justice Toal explained both the limited breadth and rationale for the court's holding:

> Although we believe that *it is possible for the adverse impact on public interest to be based on a private injury*, we conclude that the evidence in this case does not support a private right of action. . . . While we do not reject this idea [that unfair methods of competition inherently involve acts which impact public interest], we conclude that such an impact could not be inherent in this situation where only two direct competitors are involved.

*Id.* (emphasis added). In *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E. (2d) 711 (1988), the Supreme Court, relying on *Noack*, affirmed a finding of no public interest impact where the misconduct complained of involved an alleged conspiracy by merchants to prevent a new, competing business from opening. *See also Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*, 974 F. (2d) 502 (4th Cir. 1992) (finding public interest impact requirement not met in antitrust action).

The majority agrees with the trial judge's findings that the misconduct (1) occurred in a business setting; (2) has the potential for repetition; and (3) impacted Abbott (to the extent that Daisy interfered with contracts with two of its customers). The majority, however, would require another element of proof, not found in any of our prior cases: that "adverseness" must be proven to some requisite degree. The majority also appears to hold that commercial consumers are excluded under the UTPA.

In determining whether the public interest has been affected, the fact finder may consider the number of other consumers who were or are likely to be affected and the potential

for the misconduct's repetition.

Clearly both of these were present here. As noted by the majority, the trial judge believed Abbott's evidence that Daisy's conduct had the potential for repetition. Daisy had already engaged in the practice twice in the present case. Moreover, because it owned over 200 other billboard properties in South Carolina, Daisy's practice was readily capable of repetition. As the trial judge found, the practice was readily capable of repetition with other advertising companies operating in the same area.

In *Haley Nursery Co. v. Forrest*, 298 S.C. 520, 381 S.E. (2d) 906 (1989), our Supreme Court held a dispute between a commercial nursery and a grower affected the public interest. The commercial nursery's invoices to the grower and its other customers contained a printed misrepresentation. The Court held the commercial nursery's "breach of warranty impacts on the public interest because of the potential for publication of these misrepresentations to other consumers." *Id.* In *Barnes v. Jones Chevrolet Co.*, 292 S.C. 607, 358 S.E. (2d) 156 (Ct. App. 1987), we held that padding auto repair bills is an unfair trade practice that affects the public interest because of its potential for repetition. The requirement demonstrated by these two cases has been exceeded in the case now before us.

Although the majority affirms the trial judge's damage award based on Daisy's intentional interference with Abbott's contracts, it finds the same facts fall short of demonstrating an impact upon the public interest. The majority appears to require that one of the parties to the dispute be a noncommercial consumer, a notion that finds support nowhere in the UTPA or in our cases.

The trial judge found Daisy's conduct affected the public interest because it occurred "in a business setting," or "in the course of business." In other words, the misconduct was done as a matter of course, which is exactly the type of misconduct all consumer protection legislation targets. The UTPA defines trade or commerce, and uses the mandatory "shall" to include "any trade or commerce *directly or indirectly* affecting the people of this State." S.C. Code Ann. § 39-5-10(b) (1985) (emphasis added).

The record clearly shows the dispute between the parties affected the public interest both directly and indirectly. One of

Abbott's customers, who was paying $550.00 per month in lease payments, cancelled its contract with Abbott because Daisy blocked the billboard. Daisy forced another of Abbott's customers to move to a different property also owned by Abbott, making the second location unavailable for Abbott to lease to someone else. These customers fit the UTPA definition of persons: " *'Person'* shall include natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." S.C. Code Ann. § 39-5-10(a) (1985).

Outdoor billboards are by definition a medium of communication to the public. By their very nature billboards indirectly affect the public interest because the public is the intended target of the billboard's message. Buyers are willing to buy and sellers are willing to sell billboard space to communicate. Here, Daisy denied the public access to messages Abbott's customers paid to send.

The dispute between Daisy and Abbott affected the public interest. Therefore, the UTPA is available as a remedy. I would affirm the trial judge.