0732

William M. CARR and Angeline B. Carr, Appellants v. UNITED VAN LINES, INCORPORATED, Respondent.

(345 S. E. (2d) 734)

Court of Appeals

L. Dale Dove, of *Kimball & Perrill*, Rock Hill, *for appellants.*

*Benjamin A. Johnson*, of *Roddey, Carpenter & White*, Rock Hill, *for respondent.*

Heard March 18, 1986.

Decided June 16, 1986.

BELL, Judge:

William and Angeline Carr commenced this action against United Van Lines, Inc., seeking damages for delay in delivery of furniture and household goods pursuant to a contract of carriage. The complaint stated causes of action for breach of contract and for violation of the South Carolina Unfair Trade Practices Act. The circuit court granted United's motion for summary judgment. The Carrs appeal. We affirm.

The Carrs contracted with United to transport their furniture and household goods from Naperville, Illinois, to Tega Cay in York County, South Carolina. The shipping agreement included the Bill of Lading, a supplemental agreement called "Gold Umbrella" protection and United's "Golden Guarantee." The Bill of Lading and Gold Umbrella protection provided that United would pay up to the declared value

of the shipment for physical loss of or damage to any articles while in United's possession. The declared value of the Carrs' shipment was $27,000. The Golden Guarantee provided that United would pay $125.00 a day for each day delivery of the transported goods was delayed beyond May 23, 1983, the delivery date specified in the Bill of Lading. Under the terms of the Bill of Lading, United's liability for loss, damage, or delay was limited in certain respects.

While being transported by United, the majority of the Carrs' goods were destroyed by fire on May 23, 1983. In June, United paid the Carrs $2000.00 as partial compensation for the loss and damage to their goods. By check dated August 29, 1983, United subsequently paid the Carrs $23,696.50, which represented the balance due for the loss and damage to their goods. These sums plus a valuation charge and payment to a cleaning contractor brought the total paid by United to $27,000, the declared value of the goods.

The Carrs also sought payment under the Golden Guarantee of $125.00 a day from May 23, 1983, to August 29, 1983, for delay in delivery of the goods. They claimed the Golden Guarantee is a supplemental provision which provides for delay damages over and above United's liability under the Bill of Lading and the Gold Umbrella protection. United refused to make any additional payment under the Golden Guarantee, contending its total liability under the shipping agreement was limited to $27,000, the declared value of the goods.

I.

The circuit court reasoned that the Golden Guarantee was not enforceable in this case because (1) destruction of the goods created impossibility of performance and (2) the terms of the Golden Guarantee were inconsistent with the Gold Umbrella. While we disagree with the court's reasoning, we affirm the judgment. *See South Carolina Insurance Company v. Brown*, 280 S. C. 574, 313 S. E. (2d) 348 (Ct. App. 1984).

The purport of a written agreement must be gathered from the contents of the entire agreement, read as a whole, and not from any particular clause or provision thereof. *Sloan v. Colonial Life & Accident Insurance*

*Company,* 222 S. C. 248, 72 S. E. (2d) 446 (1952); *Martin v. Carolina Water Service, Inc.,* 280 S. C. 235, 312 S. E. (2d) 556 (Ct. App. 1984). Accordingly, the terms of the Golden Guarantee cannot be read in isolation, but must be considered in the context of the shipping agreement as a whole.

The shipping agreement provides, among other things:

> The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage-in-transit except loss, damage or *delay* caused by or resulting: [there follow certain exceptions; such as from "order of shipper," "Acts of God," etc.] SUBJECT, in addition to the foregoing, to the further following limitations on the carrier's liability: The carrier's maximum liability shall be ... [t]he amount of the actual loss or damage not exceeding ... the lump sum declared value ... [of the articles shipped]. [Emphasis added.]

Where delay results from casualty to the goods, as was the case with the Carrs' goods, this provision of the contract limits the carrier's maximum liability, expressly including liability for delay, to the declared value of the goods.

As able counsel for the Carrs argues, there is no conflict between terms imposing liability for casualty to the goods and terms imposing liability for delay in delivering the goods. These are separate elements of damage and the parties are free to contract for separate liability for each. Therefore, the circuit court was wrong to hold the Golden Guarantee was ineffective because it contradicted other terms of the contract. However, the carrier's maximum liability for both types of damage is limited by the contract to the declared value of the goods. Consequently, even if the Golden Guarantee applies, the Carrs, having received payment for the full declared value of the goods, cannot recover an additional $125.00 a day for delay. The judgment of the circuit court is therefore correct as to the first cause of action.

## II.

The Carrs' second cause of action alleges a violation of the South Carolina. Unfair Trade Practices Act.[1] The Act declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 39-5-20, Code of Laws of South Carolina, 1976. The Carrs maintain the Golden Guarantee is deceptive because it makes a seemingly unqualified guarantee in excess of the liability provided for by United's tariffs.

The circuit court concluded United was not guilty of any unfair trade practice, because there was "no legal defect in the contract as offered, even including the Golden Guarantee." The Carrs argue that a cause of action for an unfair or deceptive trade practice is not negated simply because there is no liability under the contract. Again we affirm the judgment on grounds other than those stated by the court.

United conducts the business of an interstate motor common carrier under ICC Certificate of Public Convenience No. MC-67234. As a regulated common carrier, it is subject to federal statutes,[2] regulations of the Interstate Commerce Commission,[3] and tariffs approved by the Commission. When it enters a contract for carriage, the contract is subject to the provisions of all its applicable tariffs lawfully published and filed. *Aero Trucking, Inc. v. Regal Tube Company*, 594 F. (2d) 619 (7th Cir. 1979).

In this case, the Bill of Lading, the Gold Umbrella protection, and the Golden Guarantee are all authorized by United's tariffs. The contract provision limiting liability for "loss, damage or delay" is taken directly from tariffs which have been approved by the Interstae Commerce Commission. *See* ICC (HGB) Household Goods Carriers' Bureau Tariff No. 400-B, Item 43, "Contract Terms and Conditions of Uniform Household Goods Bill of Lading." The tariffs require these terms to be a part of all shipping contracts. *Id.* The Golden Guarantee is likewise authorized by approved tariffs. *See* ICC (HGB) Household Goods Carriers' Bureau Supplement No. 5 to Tariff 104, "Exceptions

---

[1] Section 39-5-10 *et. seq.*, Code of Laws of South Carolina, 1976.

[2] 49 U.S.C. Section 10521 *et seq.* (1982).

[3] 49 C.F.R. Section 1000 *et seq.* (1985).

Tariff." These tariffs have the force of federal law. *Pennsylvania Railroad Company v. International Coal Mining Company*, 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446 (1913).

Because the Golden Guarantee is authorized under regulations and tariffs administered by the Interstate Commerce Commission, we hold the transaction involved in this case is exempt from the South Carolina Unfair Trade Practices Act. The Act itself provdies:

> Nothing in this article shall apply to: (a) Actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States....

Section 39-5-40(a), Code of Laws of South Carolina, 1976.

The Carrs' contract of carriage with United is admittedly subject to regulation by the Interstate Commerce Commission acting under statutory authority of the Congress of the United States. Moreover, the very contractual provisions that give rise to the Carrs' alleged cause of action under the South Carolina Unfair Trade Practices Act are either required or permitted by ICC approved tariffs. The Interstate Commerce Commission also regulates practices for the disposition of loss and damage claims. *See* 49 C.F.R. Section 1005 (1985). In addition, it regulates the advertising practices of motor common carriers. *See* 49 C.F.R. Section 1056.17 (1985). Advertising which is false, misleading, or deceptive is prohibited. *Id.* Where the conduct in question is clearly subject to the regulatory control of a federal agency, the transaction comes within the exemption granted in Section 39-5-40(a). *State ex rel. McLeod v. Rhoades*, 275 S. C. 104, 267 S. E. (2d) 539 (1980).

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.