## 1012

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMEN-
TAL CONTROL, Appellant v. David ARMSTRONG, d/b/a Ship on
Shore Seafood Restaurant, Respondent.

(359 S. E. (2d) 302)

Court of Appeals

*General Counsel Walton J. McLeod, III, and Staff Counsel Samuel L. Finklea, III,* both of *S. C. Dept. of Health and Environmental Control,* Columbia, *for appellant.*

*J. Leeds Barroll, IV,* Columbia, *for respondent.*

Heard June 17, 1987.

Decided Aug. 10, 1987.

CURETON, Judge:

This appeal involves a dispute over the adequacy of a sewage disposal system. The South Carolina Department of Health and Environmental Control (DHEC) requested the circuit court enforce a cease and desist order issued by it to respondent Armstrong prohibiting him from operating his restaurant without a permit. The circuit court held that Armstrong could operate his restaurant within restrictions imposed by the court. DHEC appeals. We reverse and remand.

In November 1985, Armstrong submitted an application to the Richland County Health Department for a permit to operate a restaurant. An employee of DHEC met Armstrong at the site of the proposed restaurant to inspect it for compliance with DHEC regulations. After the inspection, Armstrong was informed by letter that the existing septic tank and drain field were inadequate to serve the proposed restaurant, and thus no food service establishment permit could be issued until an adequate sewage disposal system was installed.

In December 1985 Armstrong submitted a revised application for a permit wherein he reduced the number of seats for the restaurant. However, DHEC continued to insist that the projected quantity of sewage would exceed the capacity of the existing disposal system. Pending resolution of ongoing negotiations between Armstrong and DHEC, the permit was neither issued nor denied.

For four days during the period January 29 to February 1, 1986, Armstrong operated his restaurant without possessing a valid food service establishment permit. On February 6, 1986, DHEC issued an administrative order directing Armstrong to cease and desist operation of his restaurant. After being served with the order, Armstrong continued to operate the restaurant. As a result, DHEC petitioned the circuit court for relief and Armstrong was ordered to appear before the trial court on February 7, 1986 to show cause why he should not be enjoined from operating the restaurant until such time as he obtained a valid permit.

At the February 7 hearing, Armstrong contended the actions of DHEC violated his constitutional rights under the State and Federal Constitutions. He also asserted that DHEC refused to apply its own Regulation 61-56 (VI)(A)(5) relative to determining the minimum capacity of sewage disposal system required to service Armstrong's restaurant. Armstrong proffered testimony over DHEC's objection[1] that the actual water usage of the restaurant during its four days

---

[1] DHEC did not contemplate that the February 7 hearing would be an evidentiary hearing. On the other hand, Armstrong came armed with an engineer who testified. DHEC was not allowed to cross-examine the engineer.

of illegal operation was lower than DHEC's estimate and that the sewage disposal system was sufficient to accommodate the proposed restaurant operations.

At the conclusion of the February 7 hearing, the trial judge issued his order permitting Armstrong to operate his restaurant on a restricted basis for ten days pending the outcome of an investigation ordered by him. The order restricted the restaurant to using no more than 1500 gallons of water per day. The trial court appointed three engineers, one representing DHEC, another representing Armstrong and the third an impartial engineer, to investigate the existing sewage disposal system and prepare a report for the court evaluating the capacity of the system.[2] After receiving reports from the engineers in which two of the three engineers were of the opinion Armstrong's sewage disposal system was adequate for his proposed restaurant, the trial judge issued an order permitting the restaurant to operate so long as it consumed no more than 1500 gallons of water per day. He also ordered DHEC to issue an operating permit to Armstrong.

Section 44-1-140(2), Code of Laws of South Carolina, 1976, grants authority to DHEC to regulate restaurants and other food service establishments. A food service establishment permit is required to operate a restaurant, DHEC Regulation 61-25(H)(1), and an adequate sewage disposal system is a prerequisite for issuance of such a permit. Section 48-1-50(5), Code of Laws of South Carolina, 1976, authorizes DHEC to issue sewage disposal permits under such conditions as it may prescribe. DHEC Regulation 61-56 prescribes the conditions for issuing permits for septic tanks. DHEC Regulation 61-56(VI)(A)(5) provides:

> Septic tanks serving establishments other than individual dwellings shall be sized according to *actual flow data when available,* [emphasis added] or by estimates of sewage flow as set forth in standards established by the Department.

---

[2] While Armstrong argues DHEC agreed to this arrangement, the record shows DHEC's objection to the procedure was preserved.

On appeal, DHEC raises several objections to the trial court's order. However, we view the question of whether the trial judge should have required Armstrong to exhaust his administrative remedies as the dispositive issue in this appeal.[3] The trial judge determined that he could pass upon the merits of Armstrong's entitlement to a permit without requiring Armstrong to complete the administrative process, based upon his view he had the "authority to allow [Armstrong] to raise constitutional defenses even if administrative remedies [had] not been exhausted," citing *Patsy v. Board of Regents*, 457 U. S. 496, 102 S. Ct. 2557, 73 L. Ed. (2d) 172 (1982).

Armstrong argues in this brief that his due process rights, presumably procedural, were violated because DHEC "openly and defiantly refused to abide by its own regulation, which violation required speculation as to water usage rather than objective proof." Additionally, he argues in his brief DHEC violated his "substantive due process rights by acting to deprive him of his livelihood ... without any substantial evidence that [he] was a threat to the public health and safety."

The constitutional basis for excusing Armstrong from the requirement of exhausting administrative remedies expressed by the court in the order under appeal is as follows:

> No evidence has been presented as to any malfunction since [Armstrong] has begun operating. Therefore, the only conclusion supported by any substantial evidence in the record is that [Armstrong] is not a threat to the public health. Accordingly, to deny [Armstrong] the right to operate would constitute a confiscation of private property without compensation, and a denial of due process.

Thus, the apparent basis for the trial court's constitutional exception to the general policy of requiring exhaustion of

---

[3] DHEC Regulation 61-72 provides that after a final administrative decision has been made on a request for a permit, a full adjudicatory hearing may be requested before a departmental hearing officer. Review may then be had of the hearing officer's decision by the DHEC Board. The Board's decision is reviewable under provisions of the Administrative Procedures Act.

administrative remedies is based on substantive due process. However, Armstrong argued both procedural and substantive due process before the trial court and, in fairness to him, we will discuss both.

The trial court held that because the evidence shows that the operation of the sewage disposal system is not a threat to public health, DHEC denied Armstrong a property right in refusing to issue a permit. Substantive due process requires that state action which deprives a person of life, liberty, or property must have a rational basis, that is, the reason for the deprivation must not be so inadequate that the judiciary will characterize it as arbitrary. *Hamilton v. Board of Trustees of Oconee County School District*, 282 S. C. 519, 319 S. E. (2d) 717 (Ct. App. 1984). The State of South Carolina has a substantial interest in *maintaining reasonable standards of purity of the air and water resources of the State. Section 48-1-20, Code of Laws of South Carolina, 1976.* DHEC, as the Agency charged with administering the Pollution Control Act, is *authorized to take action to abate, control and prevent pollution of the air and water resources of this State consistent with the public, safety and welfare of its citizens. Harper v. Schooler*, 250 S. C. 486, 189 S. E. (2d) 284 (1972). Clearly, the State's regulation of Armstrong's use of his property is "a legitimate exercise of the State's police power, rather than an unreasonable 'taking' of ... property." *Carter v. S. C. Coastal Council*, 281 S. C. 201, 314 S. E. (2d) 327 (1984).

Armstrong also argues that to deny him the right to operate his restaurant without a finding that the operation posed a threat to public health and safety denies him substantive due process. We disagree. In the first place, the parties stipulated in the statement of the case that DHEC neither granted nor denied Armstrong a permit. Secondly, the limited evidence presented in the trial court, none of which was subject to cross-examination, makes it impossible for this Court to determine whether DHEC's actions were constitutionally defective. This lack of developed evidence is symptomatic of the fact that the administrative process was not completed.

Armstrong also argues denial of procedural due process. Procedural due process contemplates notice, a reasonable opportunity to be heard and a fair hearing before a legally constituted impartial tribunal. *State v. Brown*, 178 S. C. 294, 182 S. E. 838 (1935). Due process is not a technical concept with fixed parameters unrelated to time, place and circumstances; rather, it is a flexible concept that calls for such procedural protections as the situation demands. *Mathews v. Eldridge*, 424 U. S. 319, 96 S. Ct. 893, 47 L. Ed. (2d) 18 (1976).

Armstrong's primary claim of denial of procedural due process is based on his contention that DHEC violated its own regulations by not considering actual flow data. We are not convinced from the record that DHEC was unwilling to consider actual flow data. However, even if it were so disposed under the facts of this case, we cannot say that Armstrong was denied due process of law. Here, the data that Armstrong accuses DHEC of ignoring is the same data he collected during the four days he illegally operated. DHEC regulations only require consideration of water flow data if reasonably available. DHEC contends that no data was available before the February 7 hearing and the data generated thereafter was unreliable. It is the function of DHEC in the permitting process to determine if actual flow data is available. In view of the fact that the data was collected over a short period and during a start-up period, DHEC may well have determined that the data would not accurately represent the true water usage of the restaurant after it becomes fully operational. Moreover, placing artificial restrictions on water usage, i.e., 1500 gallons per day, does not appear to us to be practical. Who will keep daily count on the water usage to insure that Armstrong does not exceed his daily water use allowance?

The evaluation of the adequacy of a sewage disposal system is uniquely within the competency of DHEC, not the courts. Here, the trial judge displaced the administrative process. By interfering with DHEC's final decision on Armstrong's application, the trial judge deprived the department of its opportunity to exercise the

discretion granted it by the General Assembly. A full and fair hearing before a DHEC hearing officer, if indeed DHEC permit officials should eventually deny Armstrong a permit, is the proper forum for determining if the instant sewage disposal system is adequate for the restaurant operation.

Accordingly, the order of the trial court is reversed and the matter remanded to the circuit court to proceed in a manner not inconsistent with this opinion.

Reversed and remanded.

GARDNER, and SHAW, JJ., concur.

