### 23361

Eddie C. WARD and Patricia Ward, Respondents-Appellants v. DICK DYER AND ASSOCIATES, INC., d/b/a Dick Dyer Volvo, Appellant-Respondent.

(403 S.E. (2d) 310)

Supreme Court

*Grady L. Patterson, III,* Columbia, *for appellant-respondent.*

*W. Joseph Isaacs,* Columbia, *for respondents-appellants.*

Heard Dec. 12, 1990; Decided March 11, 1991.

Rehearing Denied April 30, 1991.

TOAL, Justice:

This appeal raises two questions concerning the alleged misconduct of an automobile dealership. Specifically, the questions are whether a purchaser of an automobile may bring an action against the dealership under the South Carolina Unfair Trade Practices Act (UTPA) and whether the car dealership may allege as a defense an offer to replace or repurchase the car in question. We affirm in part and reverse in part.

## FACTS

Eddie and Patricia Ward brought this action against Dick Dyer and Associates, Inc. for the failure to disclose that the car they purchased had been involved previously in an accident. The Wards alleged causes of action for fraud, violation of the South Carolina Unfair Trade Practices Act and violation of § 56-15-10 et seq.

Dick Dyer denied that its salesman had failed to disclose the fact that the car had been involved in an accident. As a second defense, Dick Dyer alleged that it had offered to replace the Ward's car with another car of equal value or to repurchase the car.

Dick Dyer moved to strike the Wards' unfair trade practices cause of action on the grounds that the dealership's conduct was already governed by a South Carolina regulatory agency. The Wards moved to strike Dick Dyer's second defense on the grounds that it constituted an offer to settle a disputed claim and as such violates the rule that evidence of an attempt to settle is not permitted.

The trial court granted both motions. Both parties appealed.

## DISCUSSION

1. *Unfair Trade Practices Act*

The trial court ruled that the Wards could not maintain a cause of action for unfair trade practices because the conduct complained of is regulated by a state regulatory agency and another state statute.

Section 39-5-40 provides that the UTPA does not apply to certain specified practices and transactions. Subsection (a) provides that the Act does not apply to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina state law."

Dick Dyer argues and the trial court found that this section excludes from the Act any activity which is regulated by state or federal agencies or other state statutes. If we were to accept this contention, however, the UTPA would be rendered without meaning. Almost every business is subject to some

type of regulation. We take this opportunity to review and clarify our position on the interpretation of this exclusion provision.

In *State ex rel. McLeod v. Rhoades*, 275 S.C. 104, 267 S.E. (2d) 539 (1980), this Court held that alleged securities violations fell within the exemption provided in § 39-5-40 because securities transactions are regulated by the Securities and Exchange Commission and under the South Carolina Uniform Securities Act. The Court also adopted a "general activity" test as set forth by the Supreme Court of Rhode Island.

> " 'When the party claiming the exemption from the Act shows that the general activity in question is regulated by a 'regulatory body or officer' within the meaning of [the exemption], the opposing party . . . then has the burden of showing that the specific acts at issue are not covered by the exemption. . . .' "

267 S.E. (2d) at 541.

In reliance upon the *Rhoades* decision, the Court of Appeals held in *Scott v. Mid Carolina Homes, Inc.*, 293 S.C. 191, 359 S.E. (2d) 291 (Ct. App. 1987), that alleged unfair practices involving the sale of a mobile home were exempt from the Act because the sale of mobile homes is subject to regulatory control. The Court of Appeals, however, noted in its decision that this interpretation of the exemption might be too broad.

After much research and consideration of the events concerning the regulation of businesses during the past ten years since the *Rhoades* decision, we believe that a "general activity" test would not fulfill the intent of the Legislature in prohibiting unfair trade practices. We believe that the exemption is intended to exclude those actions or transactions which are allowed or authorized by regulatory agencies or other statutes.[1]

Many of our sister jurisdictions have similar statutory exemptions. Many of those, however, contain the provision that actions are exempt if they are "required," "specifically autho-

---

[1] We note that the sale of securities is a unique transaction. Each public offering is subject to strict regulation and must comply with stringent requirements. Very few, if any, other business transactions are subject to the strict scrutiny which is placed upon securities. Therefore, we choose to follow the vast majority of jurisdictions in holding that securities transactions remain exempt from claims under the UTPA.

rized" or "in compliance with" regulations or other statutes. While our statutory exemption uses the word "permitted," we believe that the intent of our Legislature was to exclude activities which would otherwise be allowed or authorized.

In *Skinner v. Steele*, 730 S.W. (2d) 335 (Tenn. App. 1987), the Tennessee court construed a similar statutory exemption and found that only those activities which were specifically authorized by a regulation or another statute were exempt. In discussing this ruling, the court explained as follows:

> The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is authorized or regulated by another statute or agency. Virtually every activity is regulated to some degree. The defendant's interpretation of the exemption would deprive consumers of a meaningful remedy in many situations.

*Id.* at 337.

We find this reasoning persuasive and applicable to our statutory exemption. In addition we find that this conclusion is buttressed by the fact that § 39-5-160 of the Act provides that "[t]he powers and remedies provided by this article shall be cumulative and supplementary to all powers and remedies otherwise provided by law."

We find that this interpretation of the exemption provision is consistent with some subsequent decisions by the South Carolina Court of Appeals, the United States District Court for the District of South Carolina and the United States Court of Appeals for the Fourth Circuit.

In *Bocook Outdoor Media, Inc. v. Summey Outdoor Advertising, Inc.*, 294 S.C. 169, 363 S.E. (2d) 390 (Ct. App. 1987), the Court of Appeals refused to exempt the defendants' actions from the UTPA. The case involved unfair competition between outdoor advertisers. The defendants argued that they were exempt from the UTPA because of the Highway Advertising Control Act (§57-25-110 et seq.) which empowers the Highway Department to issue permits for the erection of

signs. The Court of Appeals reasoned that the Highway Advertising Control Act is designed to regulate the size and location of the signs—not competition between competitors and therefore did not fall within the exemption.

In *Carr v. United Van Lines, Inc.*, 289 S.C. 194, 345 S.E. (2d) 734 (Ct. App. 1986), the Court of Appeals found that the transaction involved was exempt from the UTPA because the action was specifically permitted under regulations and tariffs administered by the Interstate Commerce Commission.

In *Tousley v. North American Van Lines, Inc.*, 752 F. (2d) 96 (4th Cir. 1985), the Fourth Circuit held that the interstate carrier's transactions were subject to UTPA even though it was also subject to regulation by the Interstate Commerce Act and the Interstate Commerce Commission.

In *Trident Neuro-Imaging Laboratory v. Blue Cross and Blue Shield of South Carolina, Inc.*, 568 F. Supp. 1474 (D.S.C. 1983), the Court held that the insurance company's exclusion of coverage on physician-owned CAT scans was exempt from unfair trade practice claims because the exclusion was specifically approved by the South Carolina Commission on Insurance.

Furthermore, we have previously upheld unfair trade practice claims against automobile dealerships. *See, Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 363 S.E. (2d) 691 (1988). The parties failed to raise the exemption issue in that case and therefore it was not addressed.

Thus, for the reasons discussed above, we find that a ■ plaintiff may bring an action against an automobile dealership under the UTPA. The *Rhoades* decision is modified to the extent that the "general activity" test is inconsistent with the interpretation of the exemption provision set forth in this opinion. The decisions in *Scott, supra,* and *Anderson v. Citizens Bank*, 294 S.C. 387, 365 S.E. (2d) 26 (Ct. App. 1987) are overruled to the extent that the result was based upon the "general activity" test.

2. *Settlement Offer*

As noted above, Dick Dyer offered to repurchase or replace the car when informed that the Wards had a problem with the car. This was included as a defense in Dick Dyer's answer. Pursuant to the Wards' motion, the trial court struck the issue

from the answer, but ruled that the trial judge was not bound from admitting evidence of the alleged offer during the trial.

Dick Dyer argues that the trial court erred in striking this matter on the grounds that offers of settlement are admissible except when offered as admission of liability. Here, the defendant sought to have the evidence admitted to show a lack of bad faith on its part. Dyer contends that this would be important when considering punitive damages.

In contrast, the Wards contend that a determination of wilfulness when considering punitive damages should involve only the actions at the time of the sale, not subsequent to the wrongdoing; and therefore, that the alleged offer could not serve as a defense. We agree.

The Wards alleged that Dick Dyer acted in bad faith in selling them an automobile that had previously been involved in an accident. Subsequent actions on the part of Dyer do not affect the alleged wrongdoing at the time of the sale and therefore such actions may not constitute a defense. We decline to rule on whether such evidence might be admissible during the trial as an exception to the general rule concerning offers of settlement, but merely hold that such evidence may not constitute a defense.

For the reasons discussed above, the lower court is REVERSED as to the UTPA issue and AFFIRMED as to the issue concerning the settlement offer.

GREGORY, C.J., and HARWELL, CHANDLER, and FINNEY, JJ., concur.