Don M. KNIGHT, James Lee Flowers, III, Elton Graham, Foster Graham, and Curtis Graham, Plaintiffs,

v.

AMERICAN NATIONAL FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. 4:91–3584–21.

United States District Court,
D. South Carolina,
Florence Division.

March 23, 1993.

E. LeRoy Nettles, Sr., Lake City, SC, for plaintiffs.

Richard B. Ness, Bamberg, SC, for defendant.

### ORDER

TRAXLER, District Judge.

Before the court is the motion of the defendant American National Fire Insurance Company ("American National") for summary judgment. The parties disagree on the proper method for calculating the indemnity due to the plaintiffs for 38 acres of insured tobacco which was destroyed by a hail storm. As the policy language in question is capable of but one interpretation, that offered by American National, I **grant** the motion.

### SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257, 106 S.Ct. at 2514. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324, 106 S.Ct. at 2553. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Summary judgment serves the useful purpose of disposing of meretricious, pretended claims before the court and the parties become entrenched in frivolous litigation. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2nd Cir.1987). Although summary judgment is an extreme remedy, the courts should not be reluctant to grant summary judgment in appropriate cases; indeed, summary judgment is mandated where appropriate. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir. 1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978); *Estate*

of *Detwiler v. Offenbecher*, 728 F.Supp. 103, 134 (S.D.N.Y.1989); *Burleson v. Illinois Farmers Ins.*, 725 F.Supp. 1489, 1490 (S.D.Ind.1989). In a recent trilogy of decisions—*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)—the Supreme Court has consistently reaffirmed its endorsement of pretrial resolution and summary disposition of baseless actions. These decisions reflect the mandatory nature of Rule 56. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of person asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citations omitted).

## FACTS

The material facts are not in dispute. The plaintiffs are sharecroppers. In 1990, the plaintiffs sharecropped 89 acres of tobacco in Florence County, South Carolina. Under the sharecropping arrangement, plaintiff Don Knight, the landowner, held a 50% interest in the entire acreage while the other plaintiffs held a 50% interest in various tracts of the 89 acres. On May 29, 1990, Knight filed a tobacco acreage report with the Florence County Agricultural Stabilization and Conservation Service ("ASCS") office. This report reflected the sharecropping arrangement (all 50/50) on the 89 acres of tobacco.

For the 1990 crop year, American National issued a multiple peril crop insurance policy to the plaintiffs. The policy insured the various tracts of tobacco which comprised the 89 acres. Although issued by American National, this insurance policy was, and is, regulated and reinsured by the Federal Crop Insurance Corporation ("FCIC"). Under the reinsurance agreement, American National must adjust a loss pursuant to FCIC guidelines; any deviation could result in FCIC's refusal to reimburse the insurance company for an otherwise covered loss.

On June 8, 1990, hail destroyed 38 of the 89 acres of tobacco. Three days later, on June 11, 1990, Knight reported the loss to American National; however, the sharecropping arrangement reported to the insurance company differed from the arrangement filed with the ASCS office on May 29, 1990. That same day, Knight recertified the acreage with the ASCS office to match the sharecropping arrangement reported to American National.[1] The recertification created a considerable dispute over which acreage report should be used to calculate the loss—the May 29 or June 11 report. Over two years later, the FCIC informed American National that any indemnity due to the plaintiffs should be based on the May 29, 1990, ASCS report. (September 28, 1992, letter from E. Heyward Baker, Director of FCIC reinsurance program, to American National, received October 2, 1992). Shortly thereafter, American National offered $37,309 as the indemnity due.

To calculate the indemnity due, American National needed the plaintiffs' harvested tobacco production records for 1990. Harvested tobacco production is tracked by market sales recorded on ASCS market cards. The

---

1. Some of the plaintiffs had their particular tract of tobacco completely destroyed by the hail storm. Knight recertified the acreage arrangements in order for these plaintiffs/tenants to have a crop to harvest. In return, the plaintiffs/tenants assigned their interest in the destroyed tobacco—the indemnity due—to Knight.

market cards, in turn, record tobacco sales by ASCS farm serial number. In 1990, the plaintiffs used only one farm serial number—Knight's number. Accordingly, all tobacco sales from the various tracts of the 89 acres were recorded on Knight's farm serial number. In 1990, the total harvested production on the 89 acres, as tracked by market sales records, was 142,122 pounds of tobacco. It is impossible to break this figure down further. However, one can easily calculate the harvested production yield to be 2,786 lbs. per acre.[2]

It is undisputed that the production guarantee (the amount of insurance) for the plaintiffs' 89 acres of tobacco was 1,658 lbs. per acre. Additionally, it is not disputed that the tobacco price election was $1.60 per pound. Moreover, it is undisputed that the following language of the policy is applicable for determining the amount of indemnity due:

**5. CLAIM OF LOSS**

c. We will pay you the deficiency, if any, between the amount of insurance for the farm unit shown on your Schedule of Insurance and your production to count multiplied by your tobacco price election.

d. The total production to be counted from all insurable acreage for the farm unit will include all appraised and harvested production of tobacco. Appraised production will include our appraisal of:

\* \* \* \* \* \*

(8) at least 35% of the production guarantee per acre for all unharvested acreage.

Finally, the policy defines "harvested production" as "[t]he yield which is harvested on a weight basis."

**DISCUSSION**

In this diversity action, South Carolina substantive law governs the interpretation of the policy language.

Under the law of South Carolina, insurance policies are subject to the general rules of contract construction. We must enforce, not write contracts of insurance; and we must give policy language its "plain, ordinary and popular meaning." We should not torture the meaning of policy language to extend coverage that was never intended by the parties.

*Reid v. Life Ins. Co. of North America,* 718 F.2d 677, 679–80 (4th Cir.1983) (citations omitted); *Sloan Constr. v. Central Nat. Ins. Co. of Omaha,* 269 S.C. 183, 236 S.E.2d 818, 819 (1977); *Universal Underwriters v. Metro Property,* 298 S.C. 404, 380 S.E.2d 858, 860 (Ct.App.1989).

■ In this case; the policy language for calculating a loss is clear and unambiguous. As such, the policy language must be given its "plain, ordinary and popular meaning." American National has calculated the indemnity due as $37,309 ($38,472 less $1,163 in unpaid premiums). In support of this figure as the correct indemnity due, American National presented the affidavits of Dennis L. Strickland, a crop claims adjuster with American National, and Mary Emma Dubose, an FCIC crop insurance specialist with extensive training and experience in adjusting crop losses. Both Strickland and Dubose calculated the indemnity due using the May 29, 1990, acreage report filed with the Florence County ASCS office. Their methods for calculating the indemnity due were basically the same, and the figures they arrived at were extremely close ($38,472 vs. $38,480).

More importantly, their computations accurately and completely calculated the indemnity due in accordance with the policy's unmistakably clear language. Accordingly, American National's figure of $37,309 shall be enforced as the total correct indemnity due under the policy.[3] *Reid,* at 679–80;

---

**2.** Because 38 of the 89 acres of tobacco were completely destroyed, the remaining 51 acres (89–38) produced the entire harvested production of 142,122 lbs. Thus, the yield which was harvested on a weight basis was 2,786 lbs. per acre (142,122 lbs. divided by 51 acres).

**3.** Knight's basic dispute with American National's indemnity calculations concerns the deduc-

tion of appraised production for unharvested acres. Under the policy, appraised production includes "35% of the production guarantee per acre for all unharvested acreage." Accordingly, American National deducted, as appraised production, 580 lbs. per unharvested acre (35% × 1,658 lbs. production guarantee for the 38 destroyed acres). For ambiguous reasons which are totally unrelated to the policy, Knight argues

*Sloan Constr.,* at 819; *Universal Underwriters,* at 860. Rather than burden this order with the computations used to calculate the indemnity due, Strickland's calculations are attached to this order and are incorporated herein.

 American National contends that Knight is not entitled to prejudgment interest on the indemnity due. I disagree. The policy itself is silent as to prejudgment interest; however, this silence does not preclude Knight from recovering prejudgment interest.

> The law allows prejudgment interest on obligations to pay money from the time when, either by agreement or by operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty, even if the parties do not agree on the amount of the obligation.

*Brooklyn Bridge, Inc. v. South Carolina Ins.,* — S.C. —, 420 S.E.2d 511, 513 (Ct. App.1992); *Anderson v. Citizens Bank,* 294 S.C. 387, 365 S.E.2d 26, 32 (Ct.App.1987), *overruled on other grounds, Ward v. Dick Dyer and Assocs., Inc.,* 304 S.C. 152, 403 S.E.2d 310 (1991); *Wayne Smith Constr. v. Wolman, Duberstein, and Thompson,* 294 S.C. 140, 363 S.E.2d 115, 119 (Ct.App.1987). Accordingly, Knight is entitled to prejudgment interest on the indemnity due.

**THEREFORE, IT IS ORDERED** that the summary judgment motion of American National as to the indemnity due ($37,309) is **granted.**

**IT IS FURTHER ORDERED** that Knight is entitled to prejudgment interest. The parties shall have thirty days from the date of this order to submit memoranda regarding the date when prejudgment interest should commence.

**IT IS FURTHER ORDERED** that all other motions of American National are rendered **moot.**

**IT IS SO ORDERED.**

ATTACHMENT A
AFFIDAVIT OF DENNIS STRICKLAND

SUMMARY

HARVESTED PRODUCTION

Total Harvested Production (142,122 lbs) ÷ Total Harvested Acres (51.00) = 2,786 lbs/acre

UNHARVESTED PRODUCTION

Unharvested Stage applies to all acres destroyed by hail.

1,658 lbs/acre guarantee × 35% = 580 lbs/acre

2,786 lbs/acre was applied to each harvested acre within a unit and 580 lbs/acre was applied to each unharvested acre within a unit.

Don Knight = Policy: 40960, Unit 0100

Don Knight reported to the company 50 percent interest in 12.00 acres shared with Foster Graham. See Acreage Report dated 06–11–90.

ASCS 578 dated May 29 identifies 31.00 acres in which Don Knight shares with Foster Graham 50/50. Fields are as follows:

**ACRES**

**Unharvested:** Destroyed by Hail

| | |
|---|---|
| Tract #2286, Field 3A | 4.00 acres |

that this deduction was inappropriate. *See generally* (Toni Matthews Dep. at 20–50).

 Q. "Show me in the policy where it tells you to follow it and calculate it [appraised production for unharvested acres] the way you just told me."

 A. "I can show you in my handbook, my training handbook."

(Matthews Dep. at 31.). Moreover, the rational for deducting 35% of the production guarantee for unharvested destroyed acres is simple: The policy insures a farmer's investment, not his profits. A farmer who does not harvest his tobacco crop avoids the concomitant harvest expenses.

| | | |
|------|-------|------------|
| 2195 | 2A | 7.50 acres |
| 2195 | 2B | 3.50 acres |
| 2200 | 2B | 4.00 acres |
| | TOTAL | 19.00 ACRES . |

Harvested:

| Tract #2199, Field | 2C | 5.00 acres |
|--------------------|-------|------------|
| | 1A | 7.00 acres |
| | TOTAL | 12.00 ACRES |

## PRODUCTION TO COUNT
**Unharvested:**

19.00 acres $\times$ 580 lbs/acre (unharvested penalty) = 11020 lbs.

**Harvested:**

12.00 acres $\times$ 2786 lbs/acre = 33432 lbs.

## UNIT GUARANTEE

31.00 acres 2a 1658 lbs/acre = 51398 lbs.

## DEFICIENCY FOR UNIT

51398 lbs. = 11020 lbs. = 33432 lbs. = 6946 lbs.

## AMOUNT DUE

6946 lbs. $\times$ 1.60 = $11,114

Don Knight (Unit 0100) — $11,114 $\times$ 50% = $5557
Foster Graham (Unit 0100) — $11,114 $\times$ 50% = $5557

## DON KNIGHT—POLICY: 40960, UNIT 0200

Don Knight reported to the company 50 percent interest in 12.00 acres shared with Elton Graham. See Acreage Report dated 06–11–90.

ASCS 578 dated May 29, identifies 13.00 acres in which Don Knight shares with Elton Graham 50/50. Fields are as follows:

## ACRES
**Unharvested: Destroyed by Hail**

| Tract #2283, Field | 3A | 10.00 acres |
|--------------------|-------|-------------|
| | TOTAL | 10.00 ACRES |

**Harvested:**

| Tract #2199, Field | 2B | 3.00 acres |
|--------------------|-------|------------|
| | TOTAL | 3.00 ACRES |

## PRODUCTION TO COUNT
**Unharvested:**

10.00 acres $\times$ 580 lbs/acre (unharvested penalty) = 5800 lbs.

**Harvested:**

3.00 acres $\times$ 2786 lbs/acre = 8358 lbs.

## UNIT GUARANTEE

13.00 acres $\times$ 1658 lbs/acre = 21554 lbs.

## DEFICIENCY FOR UNIT

21554 lbs. − 5800 lbs. − 8358 lbs. = 7396 lbs.

## AMOUNT DUE

7396 lbs. $\times$ $1.60 = $11,834

Don Knight (Unit 0200) − $11834 $\times$ 50% = $5917
Elton Graham (Unit 0200) − $11834 $\times$ 50% = $5917

## DON KNIGHT—POLICY: 40960, UNIT 0300

Don Knight reported to the company 0 acres shared with Lee Flowers.

ASCS dated May 29 identifies 5.00 acres in which Don Knight shares with Lee Flowers 50/50. Fields are as follows:

## ACRES

**Unharvested: Destroyed by Hail**

| Tract | 2358, Field 2A | 5.00 acres |
|---|---|---|
| | Total | 5.00 ACRES |

## PRODUCTION TO COUNT

**Unharvested:**

5.00 acres × 580 lbs/acre (unharvested penalty) = 2900 lbs.

## UNIT GUARANTEE

5.00 acres × 1658 lbs/acre = 8290 lbs.

## DEFICIENCY FOR UNIT

8290 lbs − 2900 lbs = 5390 lbs.

## AMOUNT DUE

5390 lbs × $1.60 = $8,624

Don Knight (Unit 0300) − $8624 × 50% = $4312
James Lee Flowers (Unit 0100) − $8624 × 50% = $4312

## DON KNIGHT—POLICY: 40960, UNIT 0500

Don Knight reported to the company 50 percent interest in 18.00 acres shared with Kent Brown. See Acreage Report dated 06–11–90.

ASCS 578 dated May 29 identifies 18.00 acres in which Don Knight shares with Kent Brown, 50/50. Fields are as follows:

## ACRES

**Harvested:**

| Tract | 2174, Field 4A | 18.00 acres |
|---|---|---|
| | TOTAL | 18.00 ACRES |

## PRODUCTION TO COUNT

Harvested (From Sales Records) − 50171 lbs.

## UNIT GUARANTEE

18.00 acres × 1658 lbs/acre = 29844 lbs.

NO INDEMNITY DUE

## DON KNIGHT—POLICY: 40960, UNIT 0600

Don Knight reported to the company 50 percent interest in 9.00 acres shared with Curtis Graham. See Acreage Report dated 06–11–90.

ASCS 578 dated May 29 identifies 4.00 acres in which Don Knight shares with Curtis Graham, 50/50. Fields are as follows:

## ACRES

**Unharvested:**

| Tract | 2285, Field 3A | 2.00 acres |
|---|---|---|
| Tract | 358, Field 4A | 2.00 acres |
| | TOTAL | 4.00 ACRES |

## PRODUCTION TO COUNT

**Unharvested:**

4.00 acres × 580 lbs/acre (unharvested penalty) = 2320 lbs.

## UNIT GUARANTEE

4.00 acres × 1658 lbs/acre = 6632 lbs.

## DEFICIENCY FOR UNIT

6632 lbs − 2320 lbs = 4312 lbs.

**AMOUNT DUE**

4312 lbs × $1.60 = $6,899

Don Knight (Unit 0600) − 6899 × 50% = $3450
Curtis Graham (Unit 0200) − 6899 × 50% = $3450

SUMMARY

| LOSS AMOUNT | | PREMIUM DUE |
|---|---|---|
| Don Knight | | |
| Unit 0100 − | $ 5,557 | |
| Unit 0200 − | 5,917 | |
| Unit 0300 − | 4,312 | |
| Unit 0500 − | 0 | |
| Unit 0600 − | 3,450 | |
| Subtotal | $ 19,236 | $ 359 |
| Foster Graham | | |
| Unit 0100 − | $ 5,557 | |
| Subtotal | $ 5,557 | $ 221 |
| Elton Graham | | |
| Unit 0100 − | $ 5,917 | |
| Unit 0300 − | 0 | |
| Subtotal | $ 5,917 | $ 18 |
| James Lee Flowers | | |
| Unit 0100 − | $ 4,312 | |
| Subtotal | $ 4,312 | $ 90 |
| Kent Brown | | |
| Unit 0100 − | $ 0 | |
| Subtotal | $ 0 | $ 0 |
| Curtis Graham | | |
| Unit 0100 − | $ 0 | |
| Unit 0200 − | 3,450 | |
| Subtotal | $ 3,450 | $ 165 |
| Donald Truluck | | |
| Unit 0100 − | $ 0 | |
| Subtotal | $ 0 | $ 310 |
| Total Loss Amount | $ 38,472 | Total Premium Due $1,163 |

$38,472 − $1,163 = $37,309

The above amount is based on revising the Schedule of Insurance for all policies to match the ASCS 578 dated May 29th as directed by Delivery System Services letter from Heyward Baker received October 2nd.