358 S.C. 270 (2004)
594 S.E.2d 552
INMED DIAGNOSTIC SERVICES, L.L.C., Respondent-Appellant,
v.
MEDQUEST ASSOCIATES, INC., Palmetto Imaging, Inc., and Open MRI of Florence, Inc., Appellants-Respondents.
No. 3765.
Court of Appeals of South Carolina.
Heard January 13, 2004.
Decided March 22, 2004.
Rehearing Denied April 22, 2004.
*271 Charles E. Carpenter, Jr., S. Elizabeth Brosnan, M. Elizabeth Crum and Robert W. Dibble, Jr., all of Columbia, for Appellant-Respondent.
*272 Hamilton Osborne, Jr. and James Y. Becker, of Columbia, for Respondent-Appellant.
GOOLSBY, J.:
This appeal arises out of a dispute among competing providers of magnetic resonance imaging ("MRI") services. MedQuest Associates, Inc., Palmetto Imaging, Inc., and Open MRI of Florence, Inc. (collectively "MedQuest") appeal a jury verdict in favor of InMed Diagnostic Services, L.L.C. ("InMed") under the Unfair Trade Practices Act ("UTPA"). InMed cross-appeals, arguing error in the award of attorney fees and the trial court's refusal to award treble damages. We reverse the jury verdict.

FACTS AND PROCEDURAL BACKGROUND
The State Certification of Need and Health Facility Licensure Act ("CON Act")[1] governs the acquisition and use of medical equipment such as MRI machines in South Carolina. Under the CON Act, a medical provider must obtain a certificate of need ("CON") from the South Carolina Department of Health and Environmental Control ("DHEC") before undertaking "the acquisition of medical equipment which is to be used for diagnosis or treatment if the total project cost is in excess" of $600,000.[2] If the total project cost in a given situation falls below the $600,000 threshold, the provider may seek a determination from DHEC that the CON Act does not apply.[3] A determination of this kind is known as a nonapplicability determination ("NAD"). The application and review process to obtain a CON is more detailed and timeconsuming than that to obtain a NAD.
DHEC regulations define "total project cost" as "the estimated total capital cost of a project including land cost, *273 construction, fixed and moveable equipment, architect's fee, financing cost, and other capital costs properly charged under generally accepted accounting princip[les] as a capital cost."[4] Under generally accepted accounting principles, assets are recorded at historical or invoice cost when they are acquired.
MedQuest, formed in 1994, operates six facilities in South Carolina that provide outpatient diagnostic imaging services, including MRI services. In 1998, MedQuest began negotiating with Siemens, a supplier of MRI machines, for the purchase of new MRI machines.[5] Siemens and MedQuest reached an agreement providing that, as MedQuest bought machines from Siemens, Siemens would give a major discount on every third purchase. MedQuest used two of these heavily discounted purchases for its facilities in Columbia and Florence, South Carolina, and applied to DHEC for a NAD for these acquisitions.[6] DHEC approved MedQuest's applications in early 1999.
InMed, a competing provider of outpatient diagnostic imaging services, was formed in 1998, when its founder, Robert Adams, purchased the assets of Image Trust, an MRI provider in Florence and Columbia that had ceased operations. Adams subsequently purchased replacement MRI machines for both locations and obtained a NAD for the Florence acquisition.
Both InMed and MedQuest challenged each other's NAD for their Florence locations. InMed asserted that MedQuest substantially understated the cost of its MRI equipment in its application to DHEC for a NAD. MedQuest asserted that InMed should have included a trade-in allowance for used equipment in the total cost of the project. The appeals went before the Administrative Law Judge Division ("ALJD"); *274 however, they were subsequently dismissed by agreement between the parties.
Several months later, InMed commenced the present action by filing a complaint in the Richland County Circuit Court. In its amended complaint, InMed alleged that the individual defendants "combined and conspired with each other to provide false and fictitious information to DHEC concerning MedQuest's MRI equipment costs for its facilities in Columbia and Florence." The complaint also alleged unfair trade practices, common law unfair competition, interference with prospective contractual relations, and civil conspiracy.
MedQuest answered InMed's complaint, alleging several affirmative defenses, including (1) that exclusive jurisdiction lay with the ALJD, (2) that InMed had failed to exhaust its administrative remedies, and (3) that InMed's cause of action under the UTPA should be dismissed because MedQuest's conduct was controlled by the CON Act and thus was not subject to liability under the Act.
In a form order dated December 6, 2001, and again in a formal order dated February 20, 2002, the circuit court granted summary judgment as to all causes of action against Siemens. The circuit court also granted summary judgment in favor of MedQuest as to the civil conspiracy and interference with prospective contractual relations claims; however, summary judgment was denied as to the UTPA and common law unfair competition claims.
InMed's remaining two claims were then tried to a jury from December 10-13, 2001. During the course of the trial, InMed dropped the common law unfair competition claim, and only the UTPA claim went to the jury. The jury returned a verdict for InMed, awarding $2,107,898 in damages.
On December 19, 2001, MedQuest moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. The next day, InMed moved for treble damages and attorney fees. In a form order dated January 10, 2002, the circuit court denied both motions, noting further that attorney fees would be set following a hearing on the matter. On February 4 and 6, 2002, MedQuest and InMed, respectively, appealed the denial of their motions.
*275 On March 28, 2002, the circuit court heard InMed's motion for attorney fees. By form order dated May 2, 2002, the circuit court awarded InMed $100,000 in attorney fees. InMed filed a motion to alter or amend this ruling, which was denied by form order on May 20, 2002. InMed appealed this ruling on May 29, 2002, and MedQuest likewise appealed the order awarding attorney fees.
On appeal, MedQuest argues the UTPA is inapplicable to InMed's lawsuit because the purchase of medical equipment is specifically regulated by DHEC. MedQuest also argues that InMed's abandonment of its appeal before the ALJD barred it from seeking relief in the circuit court. Finally, MedQuest contends that, even assuming its actions were subject to the UTPA, there was no evidence of a UTPA violation.
In its cross-appeal, InMed argues that the circuit court erred by refusing to award treble damages on its cause of action for unfair trade practices. InMed further asks that the attorney fees award of $100,000 be vacated and the matter remanded to the circuit court for appropriate findings as required by the controlling case law.

LAW/ANALYSIS
MedQuest first argues the UTPA is inapplicable to this case because medical equipment purchases are "actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this state... or actions or transactions permitted by any other South Carolina law," which are specifically excluded under section 39-5-40(a).[7] We agree.
The exemption provided in section 39-5-40(a) was first interpreted in State ex rel. McLeod v. Rhoades.[8] In Rhoades, the supreme court reversed the overruling of a demurrer to a complaint of "`unfair and deceptive acts or practices' in connection with the public offering and sale" of securities.[9] Holding securities transactions fell within the exemption provided by section 39-5-40, the supreme court adopted what has come *276 to be known as the "general activity" test and stated: "Initially the burden is on the party seeking the exemption to demonstrate its applicability. Once the exemption is demonstrated, the complainant must then show that the specific act in question did not come within the exemption." [10]
Several years later, however, in Ward v. Dick Dyer & Associates, the supreme court determined the general activity test "would not fulfill the intent of the Legislature in prohibiting unfair trade practices" [11] adopted the reasoning in a decision of a Tennessee appellate court, which explained the purposes of a similar exemption as follows:
The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is authorized or regulated by another statute or agency. Virtually every activity is regulated to some degree. The defendant's interpretation of the exemption would deprive consumers of a meaningful remedy in many situations.[12]
In the present case, InMed argues the UTPA exemption should not apply to MedQuest's actions because "[t]he CON Act does not allow the provision of deceptive information to DHEC in order to evade the requirements of the CON Act." We agree, however, with MedQuest that this is an unduly narrow interpretation of the law. Whether MedQuest submitted accurate information in support of its NAD applications was necessarily for DHEC to determine as part of the administrative process in deciding whether or not to grant such applications.
The stated purpose of the CON Act is "to promote cost containment, prevent unnecessary duplication of health care *277 facilities and services, guide the establishment of health facilities and services which will best serve public needs, and ensure that high quality services are provided in health facilities in [South Carolina]." [13] To these ends, the Act designates DHEC as "the sole state agency for control and administration of the granting of Certificates of Need and licensure of health facilities"[14] and expressly requires "substantive and procedural regulations ... to carry out [DHEC's] licensure and Certificate of Need duties ..., including regulations to deal with competing applications."[15]
In carrying out the legislative purpose of the CON Act, DHEC has adopted Regulation 61-15, entitled "Certification of Need for Health Facilities and Services."[16] This regulation includes specific procedures for requesting exemptions from the CON requirements.[17] The stated purpose of Regulation 61-15 is virtually identical to the stated purpose of the CON Act.[18]
We agree with MedQuest that the regulatory exemption in section 39-5-40(a) is based on the concept that the legislature has determined certain matters are appropriate for resolution by administrative agencies with particular expertise, rather than by the general jurisdiction of a trial court.[19] This concept is consistent with the supreme court's reasoning in Ward that the exemption "is intended to exclude those *278 actions or transactions which are ... authorized by regulatory agencies...."[20]
Ward concerned the failure of an automobile dealership to inform the plaintiffs that a car it sold to them had been involved in an accident.[21] In that case, the dealership argued the activity in question was regulated by Title 56 of the South Carolina Code, which (1) requires automobile dealers to be licensed by the South Carolina Department of Highways and Public Transportation; (2) subjects dealers who fail to secure a license to criminal liability; (3) provides for denial, suspension, or revocation of dealer licenses in certain cases; (4) declares certain unfair methods of competition and unfair or deceptive acts or practices to be unlawful; and (5) allows for a private right of action for certain violations.[22] Nowhere, however, as far as we can tell, is there any reference in the opinion or in the record to any statute or regulation governing the transaction that formed the basis for the complaint, i.e., the sale of the car. Moreover, the supreme court did not base its holding on the argument that there was no law allowing or authorizing the specific misconduct the defendant was alleged to have committed.[23]
In contrast, the specific transaction at issue in the present controversy is MedQuest's application for a NAD, a process *279 for which DHEC has formulated exacting procedural requirements. Whether or not MedQuest followed these procedures correctly is uniquely within the competency of DHEC, whose involvement in the application process could continue beyond granting the approval should it ever become apparent that a violation of the CON Act occurred.[24] To allow a jury in the court of common pleas to make the determination that MedQuest had submitted misleading information in support of its application for a NADespecially after InMed declined to pursue its administrative appeal of DHEC's approval of the applicationwould undermine the purpose of the exemption in section 39-5-40(a), even as that section has been narrowly interpreted in Ward, of "exclud[ing] those actions or transactions which are allowed or authorized by regulatory agencies or other statutes."[25]
We therefore hold the circuit court erred in declining to hold that, as a matter of law, the regulatory exemption of section 39-5-40 of the UTPA applies to this lawsuit and bars InMed's UTPA claim. Because our determination of this issue controls the case, we need not address MedQuest's remaining arguments or InMed's cross-appeal concerning treble damages and attorney fees.[26]
REVERSED.
STILWELL, J., and CURETON, A.J., concur.
NOTES
[1] S.C.Code Ann. §§ 44-7-110 to -370 (2002).
[2] Id. § 44-7-160(6); 24A S.C.Code Ann. Regs. 61-15 § 102(f) (Supp. 2003).
[3] See 24A S.C.Code Ann. Regs. 61-15 § 102.3 (Supp.2003) ("When any question exists, a potential applicant shall forward a letter requesting a formal determination by [DHEC] as to the applicability of the certificate of need requirements to a particular project.").
[4] Id. § 103.25.
[5] Siemens was also originally named as a defendant, but was granted summary judgment and dismissed from the action. InMed has challenged this ruling in a separate appeal.
[6] The purchase prices presented to DHEC for the two machines at issue in this dispute were $365,000 for the Florence location and $395,000 for the Columbia facility.
[7] S.C.Code Ann. § 39-5-40(a) (1985).
[8] 275 S.C. 104, 267 S.E.2d 539 (1980).
[9] Id. at 105, 267 S.E.2d at 540.
[10] Id. at 107, 267 S.E.2d at 541.
[11] Ward v. Dick Dyer & Assocs., 304 S.C. 152, 155, 403 S.E.2d 310, 312 (1991).
[12] Id. at 156, 403 S.E.2d at 312 (quoting Skinner v. Steele, 730 S.W.2d 335, 337 (Tenn.Ct.App.1987)).
[13] S.C.Code Ann. § 44-7-120 (2003).
[14] Id. § 44-7-140 (emphasis added).
[15] Id. § 44-7-150(3).
[16] 24A S.C.Code Ann. Regs. § 61-15 (Supp.2003).
[17] Id. § 104.
[18] Id. § 101.
[19] See, e.g., Unisys Corp. v. South Carolina Budget and Control Bd., 346 S.C. 158, 176, 551 S.E.2d 263, 273 (2001) (holding transactions under the Consolidated Procurement Code are exempt from the UTPA); South Carolina Dep't of Health & Envtl. Control v. Armstrong, 293 S.C. 209, 215-16, 359 S.E.2d 302, 305 (Ct.App.1987) ("The evaluation of the adequacy of a sewage disposal system is uniquely within the competency of DHEC, not the courts.... By interfering with DHEC's final decision on Armstrong's application, the trial judge deprived the department of its opportunity to exercise the discretion granted it by the General Assembly."); United Merchants and Mfrs., Inc. v. S.C. Elec. & Gas Co., 208 F.2d 685, 687 (4th Cir.1953) (holding that the proper remedy for the plaintiff in an action alleging the defendant had improperly induced it to withdraw opposition to a rate increase was an application to the South Carolina Public Service Commission for revision of rates followed by an appeal from any adverse decision to the South Carolina state court and that an action in the federal district court for fraud was "an attempt to by-pass the Commission, which should not be permitted").
[20] Ward, 304 S.C. at 155, 403 S.E.2d at 312.
[21] Id. at 154, 403 S.E.2d at 311.
[22] See S.C.Code Ann. §§ 56-15-10 through -360 (1991 & Supp.2003). The references to Dick Dyer's arguments are taken from the Respondent's Brief for Dick Dyer & Associates at 6-7, Ward v. Dick Dyer & Assocs., 304 S.C. 152, 403 S.E.2d 310 (1991).
[23] Cf. Smith v. Globe Life Ins. Co., 460 Mich. 446, 597 N.W.2d 28, 38 (1999) ("[W]e conclude that the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is specifically authorized. Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.").
[24] Anyone "undertaking any activity requiring certificate of need review" without approval from DHEC is subject to penalty as provided by South Carolina Code sections 44-7-320 through -340. 24A S.C.Code Ann. Regs. § 61-15.702. Sections 44-7-320 through -340 authorize DHEC to deny, suspend, or revoke licenses; to institute lawsuits for violations of the CON Act; and to subject persons or facilities violating the Act to criminal liability. S.C.Code Ann. §§ 44-7-320 through -340 (2002).
[25] Ward, 304 S.C. at 155, 403 S.E.2d at 312.
[26] See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).